UNITED STATES TRUST COMPANY OF NEW YORK, TRUSTEE, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 169. Argued December 17, 1935.—Decided January 6, 1936.

*Mr. Clay Judson* for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Mr. Sewall Key* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner is trustee under a trust created by John P. Wilson, in 1913, for the benefit of his three children. Under a reserved power, the trust was four times amended. The sole question is whether the amendments created three separate trusts. The question arises in relation to the taxation of income. If there is but a single trust, as the Commissioner of Internal Revenue ruled, an additional tax would be payable. If there are three trusts, as the Board of Tax Appeals determined, there would be no additional tax. The Circuit Court of Appeals held that there was only one trust. 75 F. (2d) 973. Certiorari was granted because of the conflicting decision of the Circuit Court of Appeals for the Seventh Circuit in *Commissioner* v. *McIlvaine,* 78 F. (2d) 787.

By the original deed, one-third of the net income of the securities held in trust was to be paid to each of the three children while living, and upon the death of any one, to those who were to succeed to his or her interest in accord-

ance with the provisions of the deed. During the first fifteen years of the trust the income could be accumulated by the trustee, with the written consent of the primary beneficiaries, and added to the principal. The trust was terminable at any time in whole or in part by the three children (or survivors) subject to the approval of the grantor, if living, and in any event was to terminate on the death of all the children. Upon termination, one-third of the principal was to be distributed to each of the three children if living, and the share of a deceased child was to go according to the provisions of his or her will or, in the absence of such disposition, to the surviving issue of the decedent or, in default of such issue, to the surviving issue of the grantor *per stirpes*. Provision was made for the alteration of the trust " in any respect and to any extent at any time " by the three children, or survivors, subject to the approval of the grantor if living. Thereafter the " rights and powers of all parties concerned " were to be the same as though the trust deed had originally been executed in the altered form.

In 1918, the three children, with the approval of the grantor, modified the trust so as to provide:

"The trust estate now held under said trust deed shall be divided into three separate and equal parts or shares (to which may be assigned undivided interests in the whole or any part of the said trust estate), which parts or shares shall severally be designated by our respective names, and each of us and our respective legal representatives shall have the same rights, interest and power in and over one of said three equal parts or shares and the income thereof which is given to us respectively by said indenture over one-third of said trust estate and the income thereof, except as may be otherwise specifically provided herein."

It was further provided that the whole of the net income received from each share during the remainder of 1918,

and one-half of the net income received thereafter and during the life of the grantor, should be accumulated and added to the principal of such share, with privilege of withdrawal by the beneficiary, with the grantor's consent, of the amount so accumulated. All the provisions of the original trust deed, except as they were "expressly or necessarily" modified by the new instrument, were to continue in force.

In 1919, the three children, with the grantor's approval, executed another modifying instrument which provided that one-half of the net income "of each of the three trust estates" should be paid over, as received, to the beneficiaries entitled thereto, and that the other one-half should be paid to them when the payment was requested by any two of the original beneficiaries; the net income not so paid over was to "be added to the principal of the trust fund from which it is derived." Provision was also made for the disposition of the net income in case of the death of any of the original beneficiaries and for the distribution of the "several trust estates" upon termination.

In 1920, the three children, with the approval of the grantor, modified the amendment of 1919 with respect to the disposition of income by providing that the trustee should pay out "as much of the net income from each of said separate trusts" to the beneficiaries as should be requested by a majority in interest of the beneficiaries, with the added requirement that "equal payments must be made out of the net income from each of said separate trusts, to the end that said several separate trusts may be maintained on a basis of equality in amount so far as practicable." There was a further provision that so much of the net income, "received in any year from each separate trust estate," which was not paid out should form part "of the principal of the separate trust estate" from which it was derived, and the trustee was required to

devote to charitable purposes so much of the net income "of said trusts" as should be requested by the three children (or survivors), such payments to be made "in equal amounts from each of said separate trusts."

There was a further amendment in 1928 enlarging the powers conferred upon the trustee by the original deed with respect to the borrowing of money, the borrowed sums to be dealt with " as part of the principal of the three trusts hereunder, in equal shares."

The purpose of the first amendment and the subsequent course of dealings are thus described in the findings of the Board of Tax Appeals, which are adequately supported by the evidence:

" The purpose of the amendment of September 21, 1918, was to create three separate and distinct trusts, one for each of the beneficiaries of the single trust then in existence, in order to reduce liability for income taxes on the income of the trust.

" Prior to the first amendment the trustee kept one cash account for the trust under the heading ' Trust under deed of John P. Wilson, for John P. Wilson, Jr., and others ' to which was credited all income of the trust. On September 27, 1918, three accounts were opened up by the trustee, one in the name of ' Trust under Deed of John P. Wilson for John P. Wilson, Jr.'; one under the name of ' Trust under Deed of John P. Wilson, for Anna W. Dickinson '; and the other under the name of ' Trust under Deed of John P. Wilson, for Martha Wilson.' The single account was then closed by transferring equal amounts of its balance to each of the new accounts. Thereafter cash received and disbursed on account of the trust property was entered in these accounts, one-third in each.

"At the same time the property account kept by the trustee for the stock of the single trust was closed out by transferring the items thereof equally to accounts opened up under the names of the three beneficiaries. There was

no actual division of the property held under the trust indenture. The new accounts as set up showed that one-third of each asset of the old trust represented the corpus of three new trusts, one for each of the three children of the grantor. Acquisitions of additional principal by purchase were divided equally among the three trusts.

" The stock certificates acquired by the trustee before and after September 21, 1918, were carried in the name of the petitioner as trustee under the deed of trust of John P. Wilson or in the name of a nominee of the trustee. The cash belonging to the trusts in question here and all other trusts being administered by the trustee was kept in one general account with another bank.

" During the taxable years the trustee rendered separate reports each month to the beneficiaries on the basis of a separate trust for each. For each of the years 1924 to 1929, inclusive, it filed fiduciary and income tax returns on the basis of a separate and distinct trust for each child. In his audit of the returns the respondent determined that the income held in trust under the indenture of March 12, 1913, as amended, was taxable on the basis of a single trust and a single return for each year."

The Board of Tax Appeals concluded that " three separate and distinct trusts " were created.

No question is raised as to the validity of the several amendments. The only question is as to their construction and effect. The parties, if they pleased, had power to convert the single trust into three trusts and the evidence and findings leave no doubt as to their intention to do so. The question is whether they accomplished their purpose. *United States* v. *Phellis*, 257 U. S. 156, 172. If the various securities had been divided physically, if new certificates of stock had been obtained for the several beneficiaries, and such certificates and specific bonds and cash had been set aside for each, there would be no room for argument that three separate trusts were not created. But it was

not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust. The original trust deed provided that its provisions and limitations should be construed according to the laws of Illinois. But the elementary principle is applied in Illinois, as elsewhere, that " every kind of vested right which the law recognizes as valuable may be transferred in trust." *Burke* v. *Burke,* 259 Ill. 262, 268; 102 N. E. 293, 295. " It [a trust] may be created in any property, real or personal, legal or equitable, which is in existence, and which in the eye of a court of equity, is of value." *Gurnett* v. *Mutual Life Insurance Co.,* 356 Ill. 612, 617; 191 N. E. 250, 252. Perry on Trusts, 7th ed., §§ 67, 68. Nor are the amending instruments open to the objection that the subject of the trusts was not adequately defined. Compare *Snyder* v. *Snyder,* 280 Ill. 467, 469, 470; 117 N. E. 465; *Marble* v. *Marble's Estate,* 304 Ill. 229, 236; 136 N. E. 589. Where there is an intention to create separate trusts, the fact that " the trusts " are " kept in one fund " does not necessarily defeat the intention and require the conclusion that there is but a single trust. *Matter of Colegrove,* 221 N. Y. 455, 459; 117 N. E. 813. " In many cases," said the Court of Appeals of New York in *Vanderpoel* v. *Loew,* 112 N. Y. 167, 180; 19 N. E. 481, 484, where " income and principal were given in equal shares, although out of one fund kept *in solido* for convenience of investment, a severance of the trust into its component parts has been adjudged. . . . The shares and interests are several, although the fund remains undivided." See, also, *Rollestone* v. *National Bank of Commerce,* 299 Mo. 57, 71; 252 S. W. 394.

In the instant case, immediately following the first amendment, the trustee opened separate accounts for the three trusts and the single account previously kept was closed. Income received and amounts disbursed were di-

vided and entered in the separate accounts. The property account of the single trust was closed and the items were transferred equally to separate accounts in the names of the beneficiaries, showing one-third of the assets of the old trust as representing the corpus of each of the three trusts. New principal was divided equally in the same way. If, at the outset, there had been three trust deeds, each creating a trust for the benefit of a distinct beneficiary in an undivided one-third of the property involved, no question would have arisen. We think the same result was achieved by the use of the power of amendment. We find no ground for concluding that the purpose of the parties to create the three trusts was not carried out.

The decision of the Circuit Court of Appeals is reversed and the order of the Board of Tax Appeals is affirmed.

*Reversed.*