*599 OPINION.
Smith :
The issues presented in this proceeding all arise from the administration of the trust estates created under the will of Otto Ernst Isenberg, who died in 1902. A portion of the assets of the trust estates fell into the hands of the Alien Property Custodian during the World War and have not yet been released.
The decedent’s will is clearly drawn and the provisions creating the trust estates are not complicated or ambiguous. The testator left the residue of his estate in trust, one-third to be set apart for the benefit of his widow for life and the other two-thirds to be apportioned to his surviving children, or their survivors, in equal shares. Each child was to receive the income from his portion annually or oftener and at the age of 25 years was to receive the corpus. Upon the death of the widow the one-third share of the corpus and undistributed income set apart for her benefit was to be divided and administered in the same manner as the other two-thirds part of the trust estate.
At the time of the World War all but two of the children had arrived at the age of 25 years and had received their distributable portions of the two-thirds part of the corpus of the trust apportioned to them. One of these, Dorothea, arrived at the age of 25 on November 16, 1917, but her portion was not paid over to her because she was in Germany and an “enemy” within the meaning of the Trading with the Enemy Act of October 6, 1917. The other, Paul, born in 1895, was also an enemy. He died in Germany on November 16, 1918. During 1917 the trustees under the will of Otto Ernst Isen-berg held the undistributed assets of the estate in three separate trust funds: (1) The property of which the widow was the life beneficiary together with accumulated income, (2) the property of Dorothea, and (3) the property of Paul.
*600 Early in 1918 the Alien Property Custodian, through his depositary, the Trent Trust Co., Ltd., oí Honolulu, took oxer all of the trust assets then in the hands of the trustees, thereby preventing them from administering the trust estates in accordance with the provisions of the testator’s will. On its application to the court made in 1918 the Trent Trust Co. was, on October 81, 1918, named trustee of the estate of Otto Ernst Isenberg, deceased. After that date it represented the trust estates in dual capacities, first, as depositary of the Alien Property Custodian, and, secondly, as trustee. The courts later held that it was improper for it to act as trustee while it was still the depositary of the Alien Property Custodian.
Certain of the trust assets were sold by the Alien Property Custodian in 1919.
When the trust company, as trustee, undertook to make its final report in 1921 the beneficiaries objected and claimed that the Trent Trust Co. was liable for damages for its failure as trustee to have in its possession certain shares of stock (670 shares of Kekaha Sugar Co., Ltd., stock) which had been sold by the Alien Property Custodian in 1919 and in the interim had greatly increased in value. A judgment was finally obtained against the Trent Trust Co. for $287,323.40, which amount represented the difference in the value of the‘trust estates at the date of reference to a master for the purpose of determining the facts, August 24, 1923, and the value that the trust estates (exclusive of that of Dorothea) would have had if properly administered by the Trent Trust Co. as trustee.
By decree of the trial court entered April 7, 1924, the Trent Trust Co. was removed from its position as trustee and Charles S. Davis, the petitioner herein, was named successor trustee under the will and of the estate of Otto Ernst Isenberg, deceased. By reason of an appeal from the decision of the trial court the decree did not become effective until 1929.
The judgment of $287,323.40 plus interest of $100,083, or a total amount of $387,406.40, was paid over to the petitioner trustee by the Trent Trust Co. on June 21,1929.
The principal dispute in this proceeding is over this item of $387,406.40. The respondent has determined that it is all taxable income to the petitioner as trustee under the will and of the estate of Otto Ernst Isenberg for 1929, while the petitioner contends that none of it is taxable income to him as such trustee for 1929 or any other year.
In paragraph (d) of the amended petition filed herein the contention is made that the income in dispute, if taxable at all, is taxable to ten separate trusts rather than to the petitioner as trustee of a single trust.
*601 The Board held in its prior opinion that under the will of Otto Ernst Isenberg there was created only one trust and that such trust was liable to income tax on all of the taxable income received by it in the taxable years under consideration. We are now of the opinion, however, after a careful review of the evidence and the law bearing on the question, that our prior ruling was erroneous in this regard.
We think it is apparent from the provisions of the will of Otto Ernst Isenberg that he intended to and did create one trust for the benefit of his widow and a trust for each of his children.
Paragraph second of the will directs that one-third of the remainder of the estate be “set apart” for the “use and benefit of my wife * * * to pay to her the net income, issues and profits thereof so long as she shall live.” No clearer words than those are needed to create a separate trust estate in such one-third interest for the benefit of the widow. The income on the widow’s portion was to be paid to her “annually or oftener.”
Paragraph third of the will directs that the remaining two-thirds of the estate be divided into “as many equal portions as I shall have children then living” and that one “such portion” shall be paid over to each child at the age of 25 years. The issues or profits thereof, that is, the issues or profits from such portion was to be paid over annually or oftener to the child for whom it was held. This language is equally plain in its requirement for the setting aside of a one-ninth interest in the two-thirds of the testator’s remainder estate at the time of his death in trust for each of his nine living children. Furthermore, the evidence conclusively shows that the trustees, Schultze and Kodiek, interpreted the will as creating a trust estate for the benefit of the widow and separate trust estates for the benefit of the children. In 1917 the trustees were trustees of three trusts: (1) The property held for the benefit of the widow; (2) the property constituting the separate estate of Dorothea; and (3) the property constituting the separate estate of Paul. The examining revenue agent stated in his report of March 25, 1931, covering the “Estate of Otto Ernst Isen-berg, Deceased”, for the years 1918 to 1929, inclusive, that “the income and disbursements of each separate share of the estate were kept separate on the records of both the Trustee and the Alien Property Custodian.”
On October 31, 1918, the Circuit Court of the First Judicial Circuit, Territory of Hawaii, entered an order appointing the Trent Trust Co. as “trustee of the estate of Otto Ernst Isenberg, deceased.” We do not think, however, that this appointment was intended to merge the three trust estates turned over to it by the former trustees into a single trust estate. The Trent Trust Co., as had the predecessor trustees, kept separate accounts for each trust estate received by it. *602 It received income upon the trust estates for the widow and for Paul, but never received any income on the trust estate of Dorothea. As trustee of Dorothea’s estate, the Trent Trust Co. received on November 4, 1918, a deposit by the Alien Property Custodian of $5,362.63, which amount was thereafter returned to the Alien Property Custodian without any accretion thereto. The trust estate of Dorothea is not involved in any way in this proceeding. In 1921 the Trent Trust Co. paid over to the Alien Property Custodian all property belonging to Paul and thereafter never received any of the income or of the assets belonging to Paul. The petitioner never received from the Trent Trust Co. or from the Alien Property Custodian any of the assets of Paul’s estate. From 1918 the Trent Trust Co. received income upon the assets constituting the trust estate of the widow, Helen L. Isenberg, and it is these assets which were paid over to the petitioner, Davis, on June 21, 1929, in the amount of $97,709.74 cash, plus bonds and shares of stock.
In the computation of the deficiencies for all of the years 1918 to 1929, inclusive, the revenue agent determined the amount of income attributable to the trust estate of which the widow had the life interest and the amount of the income received both by the Trent Trust Co. and by the Alien Property Custodian upon Paul’s estate. After 1921 all of the income received on Paul’s estate was received by the Alien Property Custodian. The respondent in the determination of the deficiencies has added together the income received by the trust estates of the widow and Paul by both the Trent Trust Co. and the Alien Property Custodian, and has taxed it to the petitioner as the trustee of a single trust.
We are of the opinion that the respondent was clearly in error in taxing to a single trust the income for 1918. The income received in that year and involved in this proceeding was upon the separate trust estates for the widow and Paul. It was currently distributable to the beneficiaries, the widow and Paul, under the terms of the will of Otto Ernst Isenberg, and is therefore taxable to them. They and not the trustee for the estate of Otto Ernst Isenberg are taxable upon the income received. Cf. Freuler v. Helvering, 291 U. S. 35. There is no deficiency in tax due from the petitioner for 1918.
The income received by the Alien Property Custodian for Paul’s estate for the years 1924 to 1929, inclusive, was the income of Paul’s estate. It was never the income of the Trent Trust Co. or of the petitioner. Neither received the income and neither was the trustee of his estate.
There remains for our determination the liability of the petitioner for income taxes due upon certain income received for the years 1924 to 1929, inclusive. The petitioner is successor trustee “under the *603 ■svill and of tlie estate of Otto Ernst Isenberg.” Petitioner contends that any such income received by him was income “currently distributable” to the beneficiaries or else that it was income taxable to ten separate trusts, namely, the estate of the widow, Helen L. Isen-berg, who died April 2, 1923, and the nine children or their legal representatives. Under the terms of the will of Otto Ernst Isenberg the entire trust estate in which the widow had a life beneficial interest became distributable upon her death.
The Supreme Court of the Territory of Hawaii stated in its opinion of September 1,1925, as follows:
All of the nine children of the testator survived him. All of them except Paul Otto who reached the age of twenty-five. Paul Otto died November 16, 1918, and had he lived would have been twenty-five on November 10, 1920. In our opinion each of these nine children was given by the will a vested one-ninth interest in the two-thirds of the property referred to in the third clause of the will and also in the one-third of the property referred to in the second and fourth clauses. By this we mean that each, immediately upon the death of the testator, became definitely and certainly the owner of a one-ninth interest in the property, vested in right, with merely the possession and the enjoyment of the principal itself deferred until the time stated, that is, when each became twenty-five or would arrive at the age of twenty-five if living. The same was as true in the case of Paul Otto as in the cases of the others. Paul Otto’s interest as well as the interest of each of the others was descendible, devisable and alienable.
We thus see that after the death of the widow on April 2, 1923, each of the nine children or his or her legal representatives had a distributable share in the trust estate created by Otto Ernst Isen-berg for the life of the widow. Although the interests were not immediately paid over to the children by reason of the pending litigation, we think it clear that the trustee held the undivided interests for the children and that each interest constituted a separate trust estate. In Lynchburg Trust & Savings Bank v. Commissioner, 68 Fed. (2d) 356, where it was held that three separate trusts were created rather than a single trust, the court said:
* * * Moreover, as we have seen, a separate account has been set up for the portion of the income withheld from each grandchild and the investment thereof by the trustees. This method would naturally be adopted by any one who wished to insure to each grandchild his equal share in the estate. The amounts withheld in the discretion of the trustees were of necessity unequal, by reason of the difference in the ages of the grandchildren, a situation which the testator must have had in mind. It would have been well-nigh impracticable to have ascertained accurately at any particular time the respective percentage to which each grandchild would have been entitled in a common fund, in view of the constant additions of varying sums and the changing valuations of the real and personal property constituting the corpus, involving as it would, the uncertainty of frequent appraisals. * * *
The facts here are substantially the same as those in United States Trust Co. of New York v. Commissioner, 296 U. S. 481. There, the *604 trust instrument as amended provided that the trust estate should be divided into separate equal shares for each of three beneficiaries and further provided for the disposition of the income of each separate share. The Supreme Court held, reversing the Circuit Court of Appeals for the Second Circuit, 75 Fed. (2d) 973, and affirming the Board, that under the trust agreement there were three separate trusts. In its opinion the Court said:
* * * If the various securities Rad been divided physically, if new certificates of stock had been obtained for the several beneficiaries, and such certificates and specific bonds and cash had been set aside for each, there would be no room for argument that three separate trusts were not created. But it was not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust. * * * Where there is an intention to create separate trusts, the fact that “the trusts” are “kept in one fund” does not necessarily defeat the intention and require the conclusion that there is but a single trust. In re Colegrove’s Estate, 221 N. Y. 455, 459, 117 N. E. 813. “In many cases,” said the Court of Appeals of New York in Vanderpoel v. Loew, 112 N. Y. 167, 180, 19 N. E. 481, 484, where “income and principal were given in equal shares, although out of one fund kept in solido for convenience of investment, a severance of the trust into its component parts has been adjudged. * * * The shares and interests are several, although the fund remains undivided.” See, also, Rollestone v. National Bank of Commerce, 299 Mo. 57, 71, 252 S. W. 394.
We are of the opinion that, under the Supreme Court’s decision in the case above cited, the interests of the widow and of the nine children in the testator’s estate were separate trust entities and must be so treated for tax purposes. The property in the hands of the Trent Trust Co. after the death of the widow was distributable to the estate of the widow and to the nine children or their legal representatives. Any income received on their distributable shares was taxable to the distributees and not to the estate of Otto Ernst Isen-berg, the probate of which was closed in 1905.
We do not have before us in this proceeding the separate trusts. We are not therefore called upon to determine the tax liability of any of them. We determine as to the petitioner that he is not liable to any deficiencies in income tax as the trustee of the estate of Otto Ernst Isenberg for any of the years 1918 to 1929, inclusive, involved in this proceeding.
Eeviewed by the Board.

Judgment of no deficiencies will be entered.

Mellott dissents.