FREDERIC H. FRAZIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91412. Promulgated January 19, 1940.

*Elden McFarland, Esq., Ellwood W. Kemp, Jr., Esq.*, and *William H. West, Jr., Esq.*, for the petitioner.
*Benjamin M. Brodsky, Esq.*, for the respondent.

OPINION.

TYSON: This proceeding involves income tax deficiencies determined by the respondent in the amounts of $1,860.73 and $3,114.02 for the years 1934 and 1935, respectively.

The only issue is whether the income of a trust for the respective periods of June 28 to December 31, 1934, and the calendar year 1935, is taxable to petitioner, the settlor of the trust.

The petitioner, an individual, is a resident of New York, New York. During the taxable years he was chairman of the board of directors of the General Baking Co., was a large stockholder in that company, and was the recipient of a very substantial income. During that period and also prior and subsequent thereto, Louise DeMocher Frazier, also known as Louise K. Frazier, was the wife of petitioner. The petitioner's son, Frederic W. Frazier, died on April 24, 1933.

There will be set forth here only the pertinent provisions of an original written declaration of trust executed by petitioner in New York on June 17, 1932, as amended by petitioner's written supplemental declaration executed in New York on June 28, 1934, by which latter instrument the petitioner relinquished the right to revoke the trust which he had retained in the original declaration.

The trust instruments, as operative after June 28, 1934, created an irrevocable trust and provide: that the petitioner, as settlor, "declares that he holds" 20,000 shares of General Baking Co. common stock, evidenced by designated certificates, "as Trustee, and * * * acknowledges the receipt of said property * * * as such Trustee"; that the trustee is to hold, manage, invest, and reinvest such property in trust "during the life of the Settlor," and to "pay the net income thereof to Louise DeMocher Frazier"; that the trust shall terminate upon the death of petitioner's wife, or upon the death of petitioner, whichever event first occurs; and that the "principal" of the trust upon its termination shall be paid over to petitioner if living or to his estate if dead.

The trust instruments give the trustee broad powers, in his uncontrolled discretion and without liability except for willful misconduct, to manage, sell, exchange, invest, and reinvest the trust property; to vote all stock held by the trust; to consent to any reorganization and exchange trust property thereunder; and to hold trust property, subject to registration, in his name or in his name as trustee or in the name of his nominee, whichever he may deem most advantageous for the management of the trust, provided that such registration shall neither increase nor decrease the liability of the trustee.

The trust instrument states that the 20,000 shares of stock referred to therein are pledged with certain banks as collateral for certain loans theretofore made to petitioner and provides that the trustee shall not be obligated to pay such loans or to relieve such securities from their liability as collateral.

The trust instrument provides that the trust shall be governed by the laws of New York and, further, that the trustee accepts the trust.

The above mentioned original and supplementary declarations contained the full terms of the trust and there was no other written or oral understanding with reference thereto between the petitioner and his wife, who was informed of the execution of the trust instrument. The creation of the trust was in no wise a settlement of property rights as between the petitioner and his wife. The declarations of trust did not require the petitioner's wife to expend any portion of the trust income for her support or maintenance. The petitioner's purpose in creating the trust was to provide for the security of his family, because of the uncertainty prevailing in industrial and financial conditions in 1932.

The stock certificates referred to in the trust instrument have remained registered in the petitioner's name and have also remained on deposit with certain banks as collateral security for loans made to petitioner personally prior to 1932, but those banks were notified by petitioner as to the creation of the trust. Under the petitioner's arrangement with the banks as to such collateral, the latter were not entitled to the dividends on such stock. The petitioner's wife was not an endorser or guarantor on those loans, nor was she in any way interested in them. Subsequent to the creation of the trust the petitioner, individually, has paid the interest on the loans secured by the stocks referred to in the trust instrument and has also made payments on the principal of the loans. He has never borrowed any money from his wife for the purpose of paying interest or principal on the loans and he has never borrowed any money from the trust for any purpose.

The petitioner notified the General Baking Co. of the creation of the trust and, thereafter, the dividends on the 20,000 shares embraced

in the trust have been paid to petitioner as trustee, and the dividends on other shares of the same kind of stock owned by petitioner, individually, have been paid to him individually.

The petitioner, as trustee, kept separate accounts of the receipts and disbursements for the trust. He opened a bank account with the Bankers Trust Co. in his name as trustee, deposited therein all receipts from the trust property, and never commingled such receipts with his individual funds. He has disbursed such receipts by checks made payable to his wife and signed by himself as trustee. Petitioner's wife deposited such checks in her personal bank account with the National City Bank and had the unfettered use of such funds. She did not use any portion of the funds to pay premiums on policies of insurance on petitioner's life.

During the taxable years and also prior and subsequent thereto the petitioner received a salary of not less than $50,000 per annum. During 1934 and 1935 the petitioner maintained a home for himself and his wife and he personally expended approximately $20,000 in each of those years for household expenses.

During the year 1934 dividends in the amount of $13,000 were paid on the 20,000 shares of stock referred to in the trust instrument, of which amount $5,000 was paid prior to June 28, 1934, and $8,000 was paid subsequent to that date. During the year 1935 dividends in the amount of $12,000 were paid on such stock.

The $5,000 dividends paid prior to June 28, 1934, were paid at a time the trust was revocable, were reported on petitioner's individual income tax return for 1934, and no question is raised here with respect thereto. The dividends of $8,000 paid between June 28, 1934, when the trust by amendment became irrevocable, and December 31, 1934, and the dividends of $12,000 paid during 1935 were reported on the fiduciary returns filed by petitioner for each of those years respectively and, also, were reported on the individual income tax returns filed by petitioner's wife for each of those years respectively. All income tax returns were filed with the collector of internal revenue in New York.

In determining the deficiencies in controversy, the respondent has increased the petitioner's gross income as reported for the years 1934 and 1935 by the amounts of $7,999.80 and $12,000, respectively, on account of the last above mentioned dividends.

The petitioner contends that the income in question was that of a valid irrevocable trust; that the net income of such trust was not only distributable to, but was also actually distributed to, petitioner's wife for her unfettered use and that petitioner is not subject to tax thereon under any of the provisions of the applicable revenue act.

The respondent determined, and now contends, that the income in question is taxable to petitioner under the provisions of sections 166 and 167 of the Revenue Act of 1934,[1] and he further contends that petitioner retained such control over and interest in the securities referred to in the trust instrument that he remained, in substance, the owner thereof and is consequently subject to tax on the income therefrom under the provisions of section 22 (a) of the Revenue Act of 1934.

Since the trust was irrevocable and not subject to any alteration or modification after June 28, 1934, and, further, since no part of the income from the trust corpus was or could be either distributed to, accumulated, or held for future distribution to petitioner, the settlor, this case does not fall within the express provisions of either section 166 or section 167, *supra*, notwithstanding the petitioner's reversionary interest in the corpus of the trust upon its termination by the terms of the trust instrument. *Phebe Warren McKean Downs*, 36 B. T. A. 1129, and *Jay C. Hormel*, 39 B. T. A. 244, and the authorities cited therein.

Upon the facts herein, and upon authority of the decisions in *Carleton H. Palmer*, 40 B. T. A. 1002; and *Claude R. Branch*, 40 B. T. A. 1044, and the cases cited therein, we hold that during the period June 28 to December 31, 1934, and all of the year 1935, the petitioner, as trustee, was validly and irrevocably holding the legal title to the 20,000 shares of stock in question for the use and benefit of his wife; that the powers given to petitioner, as trustee, relate only to the management of the trust corpus and do not invest in the petitioner,

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

    (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

    (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

    (a) Where any part of the income of a trust—

        (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

        (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

        (3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

as settlor, any individual control over the economic benefits or enjoyment of the trust property; that a completed transfer in trust had been consummated prior to the periods here in question; that petitioner was not, in substance, the individual owner of the stock in question; and that he was not subject to tax on the income therefrom under section 22 (a), *supra*.

The only substantial difference between the facts in the cases cited in next preceding paragraph and those here, is that in the cited cases the settlors covenanted in the trust instruments to indemnify and hold harmless the trust estate against any loss occasioned by resort to the trust corpus which had been theretofore pledged as collateral for the payment of settlor's personal indebtedness, while here there was no such covenant. We do not think that this case is brought within the purview of section 166, *supra*, because of the possibility that the trust corpus might be resorted to through sale thereof by the pledgee to pay settlor's personal indebtedness and thus to discharge his personal obligation, without a correlative obligation on his part to indemnify and hold harmless the trust estate in such an event. Cf. *Henry A. B. Dunning*, 36 B. T. A. 1222, 1224. Should such a sale be made and the proceeds thereof be used in payment of the settlor's obligations to the banks, it would not be through the exercise of any power vested by the trust instrument in the settlor, or anyone else, to revest in the settlor the corpus of the trust, or any part thereof, but instead would be made under an entirely separate and preexisting agreement executed between the bank with which the corpus was deposited as collateral and the petitioner individually, whose personal indebtedness was thereby secured.

"Every kind of vested right which the law recognizes as valuable may be transferred in trust." *United States Trust Co.* v. *Commissioner*, 296 U. S. 481. What the petitioner here transferred in trust was all of his vested right in 20,000 shares of General Baking Co. common stock, subject to a then existing lien thereon. That this was a substantially valuable vested right is demonstrated by the fact that the stock produced dividends in the respective amounts of $13,000 and $12,000 for the years 1934 and 1935, and these dividends were actually paid to the beneficiary of the trust in accordance with the provisions of the trust instrument.

The respondent erred in his determination of the deficiencies in question.

*Decision will be entered for the petitioner.*