No. 50,322

In the Matter of the Estate of James W. Berryman, Deceased, and in the Matter of the Testamentary Trust "B" for United Presbyterian Foundation Under the Will of James W. Berryman, Deceased. UNITED PRESBYTERIAN FOUNDATION, *Appellant,* v. ELOISE O. BERRYMAN, FIRST NATIONAL BANK IN WICHITA, *Appellees.*

(595 P.2d 1120)

Opinion filed June 9, 1979.

*Harold S. Herd,* of Coldwater, was on the brief for appellant.

*Willis A. Shattuck,* of Ashland, was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This matter is before the court on an appeal from

an order of the district court interpreting certain provisions of the will of James W. Berryman, deceased. Mr. Berryman, whose death occurred May 12, 1974, had executed a will on September 6, 1972 which was admitted to probate in Clark County on June 14, 1974. Mr. Berryman left an estate valued at $3,567,530.44 and a dispute has arisen over the proper construction of Article IV of his will which reads as follows:

### "ARTICLE IV

"I give, devise and bequeath all the rest, residue and remainder of my property, both real and personal and wheresoever situated, which I may own or be entitled to at the time of my death, after charging such property with the payment of all inheritance, estate, transfer, succession and other death taxes imposed by reason of my death, which shall be designated as my residuary estate, as follows:

"1. If my wife, Eloise, shall survive me, I direct that my residuary estate be divided into two trusts. It would be difficult to divide the real estate, mineral interests and certain other property which I own, therefore, I direct that there be no physical segregation or division of trust assets as between the separate trusts. Instead, each trust shall reflect an undivided interest in the entire trust estate, and said trust estate shall be invested, reinvested and maintained as undivided interests for the two trusts which shall be known as Trust A and Trust B.

(a) Trust A shall consist of a three-fourths (¾) fractional share of my said residuary estate.

(b) Trust B shall consist of a one-fourth (———) fractional share of my said residuary estate or, if my wife shall not survive me, it shall consist of my entire residuary estate.

"2. (a) I give, devise and bequeath Trust A to the First National Bank in Wichita, Wichita, Kansas, and my wife, Eloise O. Berryman, as co-trustees, in trust, to hold, manage, invest and reinvest the same, to collect and receive the income therefrom and to pay or apply all of the net income therefrom annually, or at more frequent intervals, to or for the use of my wife, Eloise, during her life. In addition, the trustees may distribute as much of the principal of Trust A to my wife and charge it against the power by her Last Will and Testament to appoint the entire principal of this Trust A to her estate, free of trust, or to or in trust for the benefit of such other persons or objects, in such amounts, shares, or proportions and either absolutely or upon such lawful trusts, terms and conditions, as she shall appoint by her said Will. Said power of appointment shall be exercisable only by a provision in my said wife's Will which shall specifically refer to and exercise said power. Upon the death of my said wife, any of said principal not effectively appointed by her Will shall be added to Trust B, the principal so added to follow the disposition of Trust B in all respects as to both income and principal. Any costs or expenditures of any nature, including any inheritance, estate, transfer, succession or other taxes imposed or incurred by reason of the death of my wife shall be charged against the property so passing to Trust B.

(b) Any provision of this Will and any Codicil to it to the contrary notwithstanding, the trustees of Trust A may at any time in their absolute and uncontrolled discretion terminate Trust A and pay over and deliver all of the principal

and income of Trust A then in their hands to my wife, Eloise, to be her absolute property free of trust. My said wife shall have the right at any time and from time to time to withdraw and have delivered to her, free of trust, so much of the principal of Trust A as she may from time to time direct in writing, all such withdrawals to be charged against her fractional share.

"3. I give, devise and bequeath Trust B to the First National Bank in Wichita, Wichita, Kansas, as sole trustee, in trust, to hold, manage, invest and reinvest the same, to collect and receive the income therefrom and to pay or apply the net income therefrom to or for the use of the United Presbyterian Foundation, a Pennsylvania corporation registered in the state of New York with offices at 475 Riverside Drive, New York, to be used for the educational, benevolent and charitable programs of the church as directed by the General Assembly of the United Presbyterian Church of the United States of America. Trust B shall continue until 1995, or ten years after the death of the survivor of myself and my wife, whichever date is later, at which time the corpus is to be distributed to said United Presbyterian Foundation."

It has been contended that by reason of the language used in Article IV, paragraph 1, only one trust was established and that the interest of trust B in the residue of the Berryman estate is not an undivided portion of the decedent's entire interest in the property which constitutes such residue. It was argued that the following language in Article IV, paragraph 1:

"It would be difficult to divide the real estate, mineral interests and certain other property which I own, therefore, *I direct that there be no physical segregation or division of trust assets* as between the separate trusts. Instead, each trust shall reflect an undivided interest in *the entire trust estate,* and *said trust estate* shall be invested, reinvested and maintained as undivided interests for the two trusts which shall be known as Trust A and Trust B." (Emphasis added.)

reflects an intent of the testator that only one trust be established and that trusts A and B are not separate entities each owning an undivided interest in the residue. The trial court held that two separate trusts were contemplated and established by the will and that each trust owned, as a tenant in common with the other trust, an undivided interest in the mineral and real property interests included in the residuary estate of the decedent, free and clear of any interest of the other trust. This appeal followed.

The primary function of the court in the interpretation of wills is to ascertain the testator's intent as derived from the four corners of the will and, once ascertained, the intent will be executed unless contrary to law or public policy. *In re Estate of Cline,* 170 Kan. 496, 227 P.2d 157 (1951).

In *Johnston v. Gibson,* 184 Kan. 109, 334 P.2d 348 (1959), we held:

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." Syl. ¶ 3.

The rules of construction were summarized in *In re Estate of Ellertson,* 157 Kan. 492, 142 P.2d 724 (1943):

"There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson,* 141 Kan. 903, 905, 44 P.2d 269). The will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. (*Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527; *Selzer v. Selzer,* 146 Kan. 273, 69 P.2d 708.) Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. (*Johnson v. Muller,* 149 Kan. 128, 86 P.2d 569.) The court must put itself as nearly as possible in the situation of the testator at the time he made the will and from a consideration thereof and the language used in every part of the will, determined the purposes and intentions of the testator (*Dyal v. Brunt,* 155 Kan. 141, 123 P.2d 307). All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intent must prevail if it is consistent with the rules of law (*Zabel v. Stewart,* 153 Kan. 272, 109 P.2d 177). The above cases are illustrative. Many other of like effect might be cited. It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. . . ." pp. 496-497.

We elaborated upon these rules in *Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975):

"In construing a will courts must (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) avoid any interpretation resulting in intestacy when possible, (*d*) give supreme importance to the intention of the testator, and (*e*) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms." Syl. 1.

See also *In re Estate of Wernet,* 226 Kan. 97, 596 P.2d 137 (1979).

An application of these general rules and a careful analysis of

the Berryman will discloses the obvious intention of the testator to create two separate trusts, trust A for the benefit of his wife and trust B, a charitable trust for the benefit of the United Presbyterian Foundation. Mr. Berryman provided for co-trustees of trust A and a single trustee for trust B. Trust A may be terminated in whole or in part at anytime the beneficiary chooses to do so. Trust B cannot be terminated. Trust A is given a three-fourths fractional share of the residuary estate and trust B a one-fourth fractional share. These shares are distinct and separate and no provision of the Berryman will would allow the noncharitable trust to reach or invade the assets of the charitable trust, or vice versa. The one-fourth fractional share of trust B is to be applied to charitable uses, both as to income and corpus. Trust A is subject to the whim and control of Mrs. Berryman. Article V of the will sets forth certain powers and duties of the trustees including the requirement that the trustees maintain separate books of account recording all transactions of each trust. Article V (h)(1) and (2) specify certain duties and obligations for the trustee of trust B which do not apply to the trustees of trust A.

The reference in Article IV, paragraph 1, to *"the entire trust estate," and "said trust estate"* and the suggestion by the testator that there *"be no physical segregation or division of trust assets as between the separate trusts"* must be considered and read in conjunction with numerous other references in the will which reflect the intent to establish two separate trusts. A will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the overall intent of the testator. To read the above quoted language out of context and conclude that one trust was intended would do violence to the obvious intent of the testator. The better reasoning would appear to be that the testator, in using the language "trust estate" in said article, was referring back to his gift of the entire residuary estate which by specific language in the same paragraph directed a division *into two trusts.* The questioned language would then read:

"Instead, each trust shall reflect an undivided interest in the entire residuary estate, and said residuary estate shall be invested, reinvested and maintained as undivided interests for the two trusts which shall be known as Trust A and Trust B."

The testator has referred consistently throughout the will to

trust estates, trustees and other expressions indicative of two separate trusts. Where a trustor uses plural expressions such as "trust estates," "trusts," "said estates," "trust funds," "several trust estates," and "respective trust estates," the indication is that he had in mind not one, but several trust estates. 76 Am. Jur. 2d, Trusts § 16. The initial directive in the will clearly specifies *"I direct that my residuary estate be divided into two trusts,"* and essentially all of the language of the will is consistent with that directive. Subsequent portions of the will must be read in light of the testator's primary direction and purpose to establish two separate trusts. It perhaps should be pointed out that the trial court has already approved the establishment of separate trusts and has ordered the distribution of assets to the separate trusts. Intangible personal property, consisting of cash and corporate stocks readily distributable in kind, have been assigned three-fourths to trust A and one-fourth to trust B. Certain mineral and real property interests have also been assigned to the two trusts in undivided interests on the same ratio. We find the action of the district court in making such distributions to the two separate entities entirely proper.

If there could be any doubt as to the intent of the testator, it is dispelled by Article VI, paragraph (f) of the will wherein the testator makes it clear that his intent is that trust B shall be a separate charitable trust which qualifies for a charitable deduction under the Internal Revenue Code. That provision of the will reads:

### "ARTICLE VI

"(f) None of the powers herein given my executor shall be construed, applied, or used in any manner to impair the tax-exempt religious, charitable, educational and other exempt purposes to which the undivided one-fourth (———) of the residue of my estate has been dedicated by Article IV, Paragraph 3, hereof, and to the extent that such power might be applied or used in any manner that would impair such tax-exempt status, the powers shall be construed as being limited by my express intention to create a charitable trust."

As might be expected many of the cases which have arisen involving the determination of whether one or more trust entities have been intended are cases involving federal estate or gift taxes.

The United States Supreme Court in *U.S. Trust Co. v. Commissioner,* 296 U.S. 481, 486-487, 80 L.Ed. 340, 56 S.Ct. 329 (1936), stated:

"If the various securities had been divided physically, if new certificates of stock had been obtained for the several beneficiaries, and such certificates and specific bonds and cash had been set aside for each, there would be no room for argument that three separate trusts were not created. But it was not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust. . . . Where there is an intention to create separate trusts, the fact that 'the trusts' are 'kept in one fund' does not necessarily defeat the intention and require the conclusion that there is but a single trust. *Matter of Colegrove,* 221 N.Y. 455, 459, 117 N.E. 813. 'In many cases,' said the Court of Appeals of New York in *Vanderpoel v. Loew,* 112 N.Y. 167, 180, 19 N.E. 481, 484, where 'income and principal were given in equal shares, although out of one fund kept *in solido* for convenience of investment, a severance of the trust into its component parts has been adjudged. . . . The shares and interests are several, although the fund remains undivided.' See also, *Rollestone v. National Bank of Commerce,* 299 Mo. 57, 71, 252 S.W. 394."

The United States Circuit Court of Appeals for the Third Circuit has held that words such as those used in the will of James W. Berryman have the effect of creating separate trusts rather than one trust. In *Union Trust Co. of Butler v. Commissioner of Internal Revenue,* 84 F.2d 386, 387 (3rd Cir. 1936), it is stated:

"The decisive question is whether the deed of trust created one or five trust estates. Since this question involves the construction of a written contract, it is a question of law and the board's conclusions are subject to review on appeal. Without setting out the trust deed in extenso, we think the purpose of the deed is clearly shown to create separate trusts for each of the grantor's children. Such plural expressions as 'trust estates,' 'trusts,' 'said estates,' 'trust funds,' 'several trust estates,' 'respective trust estates,' indicate that the grantor had in mind, not one, but several trust estates. The provisions that the trustee keep accounts with all the beneficiaries separately likewise indicate an intention on the part of the grantor to create separate trusts. Although the trust instruments in the cases of United States Trust Company of New York v. Commissioner, 296 U.S. 481, 56 S.Ct. 329, 80 L.Ed. 340, and Helvering v. McIlvaine, 296 U.S. 488, 56 S.Ct. 332, 80 L.Ed. 345, differ in certain respects from the trust instrument in the instant case, we think they are favorable to the contention of the petitioner that several trusts were created in the instant case.

"So holding, the order of the Tax Board is reversed and the record returned for procedure in accordance herewith."

More recently, in the case of *Estelle Morris Trusts,* 51 T.C. 20, 36 (1968), *aff'd* 427 F.2d 1361 (1970), the United States Tax Court had a similar issue upon which it ruled as follows:

"As shown by our findings, paragraph (A) of each trust instrument expressly directs that the trustee 'shall apportion the Trust Estate into two (2) equal shares, each of which shall be a separate Trust,' one for the benefit of Barney R. Morris

and one for the benefit of Estelle Morris. Paragraph (E)(25) of each instrument, while providing that 'for the sake of convenience' in administration the principal and income of the two shares may be combined or pooled, expressly reaffirms the intention of the grantors that the two shares created for the primary beneficiaries shall 'each constitute a separate Trust.' These specific directions by the grantors, stated clearly and unequivocally, cannot be ignored."

It is well settled that the res of a trust may be a fractional or undivided interest without violating the requirement that the subject matter of the trust be definite. Bogert, Trusts & Trustees, § 111 (2d ed. 1965 and 1978 Supp.); Bogert & Bogert, Law of Trusts § 25, (5th ed. 1975); *McHarg v. Fitzpatrick,* 210 F.2d 792 (2d Cir. 1954); *Caskey v. Cowgill,* 243 S.W.2d 1000 (Ky. App. 1951).

The remaining issue is a determination of the nature of the interest held by each trust in the assets of the Berryman residuary estate. The language of the will specifies trust A shall consist of a three-fourths undivided interest and trust B a one-fourth undivided interest in the residue. An undivided right or interest is defined in Black's Law Dictionary 1697 (4th ed. 1968), as:

"An undivided right or title, or a title to an undivided portion of an estate, is that owned by one of two or more tenants in common or joint tenants before partition."

In determining whether a tenancy in common, as opposed to a joint tenancy, has been created Kansas favors the former. K.S.A. 58-501 provides in part:

"58-501. Tenancy in common unless joint tenancy intended, when; exception; joint tenancy provisions. Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created."

We hold that the will of James W. Berryman created two separate trusts, A and B; that each trust owns in fee simple absolute an undivided interest in the entire residuary estate of the decedent; that the interest of trust A is an undivided three-fourths interest and that of trust B an undivided one-fourth interest; that each trust owns its interest as a tenant in common with the other trust and that such ownership is subject to all of the rights of a tenant in common including the right to demand partition of any or all of the property at any time; that trust B owns the entire fee simple interest including both the income and remainder interest in one-fourth of the decedent's residuary estate, as a tenant in

common with trust A, free and clear of any other interest or claim of trust A; that trust A owns the entire fee simple interest in three-fourths of the decedent's residuary estate as a tenant in common with trust B, free and clear of any other interest or claim of trust B; and that the decision of the trial court as may be modified by the foregoing be affirmed.

The judgment is affirmed in accordance with the views expressed herein.

HERD, J., not participating.