**McHARG et al. v. FITZPATRICK.**

**No. 135, Docket 22870.**

United States Court of Appeals Second Circuit.

Argued Jan. 12, 1954.

Decided March 3, 1954.

Alonzo W. Watson, Jr., Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Sp. Assts. to Atty. Gen., Simon S. Cohen, U. S. Atty., Hartford, Conn., Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn., for appellant.

Francis P. Schiaroli, Raymond E. Hackett, Edward F. Snyder, Stamford, Conn., for appellees.

Before L. HAND, FRANK and MEDINA, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiffs, "Successor Trustees" under the will of Henry K. McHarg, deceased, sue the defendant, a former Collector of Internal Revenue for the District of Connecticut, to recover income taxes alleged to have been unlawfully collected. The only question is whether the income should have been computed on the basis of three separate trusts, or of a single trust; and that in turn depends upon Paragraph Thirteenth (a) of McHarg's will, which was admitted to probate in the courts of Connecticut, of which he had been a resident. In March, 1949, the plaintiffs filed an income tax return for the year 1948, in which they treated the total income arising under that paragraph as that of a single trust, and they paid the tax accordingly. On September 7, 1950, they filed a claim for refund of a part of this payment, then asserting that they had paid under a mistake, because the income of the property should have been treated as coming from three separate trusts. If this was right, it would concededly have resulted in an overpayment of about $10,000. The Commissioner of Internal Revenue disallowed the claim, and this action followed. The trustees never physically divided into separate parts the trust property described in the paragraph; and until the year 1949 they had always reported the income, as though it came from a single trust; moreover, although on March 14, 1951, the Court of Probate of the District of Ridgefield, Connecticut, in passing their accounts for the year 1949, found that it was the intent of the testator to establish separate and independent trusts under the paragraph, it nonetheless declared that, for purposes of investment and accounting, the trustees might continue to administer the trusts as one. All four of the beneficiaries named in the paragraph were alive when the testator died, but his son died in 1943, and the principal of his share had been distributed to his issue *per stirpes*. The only relevant section of the Act [1] merely declares that "the taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust"; and that gives no guidance as to when "property held in trust" for more than one person is to be taxed as one trust, or as several.

The Supreme Court in United States Trust Co. of New York v. Commissioner of Internal Revenue, 296 U.S. 481, 487,

1. § 161(a), Title 26, U.S.C.

56 S.Ct. 329, 332, 80 L.Ed. 340 held that "it was not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust." And again: "Where there is an intention to create separate trusts, the fact that 'the trusts' are 'kept in one fund' does not necessarily defeat the intention and require the conclusion that there is but a single trust." This settled a point that until then had been in dispute: i. e., there may be separate trusts within § 161(b), although the trustee is the same and the *res* in each is a separate undivided interest in the same mass of real and personal property. It decided nothing more save that in that particular instance there were three separate trusts; and that, given the initial ruling, could hardly be doubted. All of the many decisions on the subject do, indeed, hold that the settlor's intent is decisive; but their use of the word is left somewhat uncertain. They may only mean the intent to create those limitations that the settlor in fact does create, or they may include his added belief, or his purpose, that those limitations shall be treated as one trust, or as several; and it is indubitably the case that very often they appear to regard the second factor as relevant. It can be only for that reason that they have, for instance, so often laid stress upon whether the settlor used the singular, or the plural, in speaking of the limitations he sets up.[2] In spite of these expressions (none of them, however, having been determinative), we cannot avoid believing that the second factor should have no place in deciding the issue. Obviously that issue is the tax actually imposed; and, whatever may be the proper differentia to determine whether there are one, or several, trusts, it would be anomalous to make any part of it the set-

tlor's understanding of the legal effect of what he was doing—or of his purpose in doing it. It would of course be quite untrue—especially in the field of torts— to say that a man's purpose can never be a determinant of his civil liabilities; but, so far as we can recall, it is never a measure of his public duties. Income taxes are imposed upon persons because of what they receive from property held by them, or for their benefit; and it cannot be permissible to make them turn, either upon what rights the settlor supposed he had created, or what rights he may have wished to create, but did not. We do not believe that it would make the least difference in the case at bar, for example, how often, or how consistently, the testator used the singular or the plural, or that he used the word "shares" instead of "trusts" to describe the limitations set up in Paragraph Thirteenth (a). Incidentally, it is usually the pursuit of our *ignis fatuus* to try to find out whether he has meant to make one trust or more; and so it would be in the case at bar. However, we refuse to enter upon that speculation, because we hold that, even if we were to succeed, the result would be irrelevant.

■■ Coming then to the limitations in Paragraph Thirteenth (a), although we will not try to lay down any general principle by which the question can always be answered, it appears to us that the limitations plainly fall on the side of a plurality of trusts. The testator started with an unconditional devise and bequest to his trustee of a one-third undivided interest in the residue of his estate—less $20,000. That of course vested in the trustee the legal title to such an undivided "one-third part," quite as though the third had been distributed in kind. He then went on to describe the trustee's duties as follows. He was to subdivide "the same"—the undivided third—"into four equal

2. State Sav. Loan & Trust Co. v. Commissioner, 7 Cir., 63 F.2d 482; Huntington Nat. Bank v. Commissioner, 6 Cir., 90 F.2d 876; MacManus v. Commissioner, 6 Cir., 131 F.2d 670; Hale v. Dominion National Bank, 6 Cir., 186 F.2d 374; Johnson v. United States, 65 Ct.Cl. 285; Fiduciary Trust Co. v. United States, D. C., 36 F.Supp. 653.

shares," to collect the income "thereof": i. e., of the "shares," and "to pay the income of one of said shares" to his son, "during his life and upon his decease to divide and distribute the principal of said share, and I give, devise, and bequeath the same, to and among his lawful issue, per stirpes." Then there followed three successive directions, each couched in precisely the same words: one in favor of a granddaughter, a second in favor of a grandson, and the third in favor of another granddaughter; and the paragraph ended with a proviso that, if any grandchild should die "without lawful issue him or her surviving, then * * * to divide and distribute and I give, devise and bequeath all shares" thus "defeated to and among the lawful issue of my said son, per stirpes." Thus, although each "share" began with the testator's death, as was inevitable, and although there was but one trustee for all the "shares," no "share" had any other feature in common with any other "share." Each had only one beneficiary, and he or she had no possible interest in any other "share" while the *res* of that "share" was held in trust at all. The death of any beneficiary put an unconditional end to any equitable ownership of that "share." Indeed, the testator had been at unnecessary pains to make it clear that the succeeding estate or interest should be legal, not in any degree equitable; for he was not content with a mere direction to the trustee "to divide or distribute" the principal among a beneficiary's "lawful issue"; but—to make assurance doubly sure—he followed that direction with words of formal legal transfer: "I give, devise and bequeath." Furthermore, during the existence of the "share," *qua* "share," it was not to receive any addition from any of the other "shares"; nor was it to be drawn upon in favor of another "share." Each "share," during the whole period of its existence in trust, was as completely isolated from all the other "shares" in composition, in beneficiary, and in duration, as though they had all been set up by separate deeds in the testator's lifetime. Perhaps it would go too far to say that equitable limitations are to be deemed a separate trust within § 161(b), if they retain their content for a period not determined by that of any similar concomitant limitations, without additions to them from others, or withdrawals from them to others, and without the interpolation of new beneficiaries, or the loss of any of their own beneficiaries. But it seems to us that, if these factors do all combine, as they did here; and if there are no other factors that make the limitations depend upon the course of any other set of limitations, the income of each set is to be treated as that of an individual. But, particularly, whatever may be the indicia that should settle the question, we repeat what we said at the outset: among those indicia is not the belief or desire of the settlor about what he has created. That is not for him to say; he may create what he likes, but he may not say how it shall be taxed.

Judgment affirmed.