Frank C. Rand Trust, U/W for the benefit of the Henry H. Rand Family Group, Norfleet H. Rand, Henry H. Rand and Mercantile Trust Company, Trustees, et al. [1] v. Commissioner. Rand Trust v. Commissioner
Docket Nos. 72381-72385; 76434-76441.
United States Tax Court
T.C. Memo 1960-216; 1960 Tax Ct. Memo LEXIS 73; 19 T.C.M. (CCH) 1205; T.C.M. (RIA) 60216; October 11, 1960
*73 Where the will and trust indenture provided for the subdivision of each family group's share into separate parts, contained language in the various provisions evidencing intention to create separate trusts, and used the plural or singular form where appropriate, and where the trusts as created were in most respects independent of each other, held, the instruments provided for separate trusts within each family group for the respective living and after-born grandchildren and grandnieces or grandnephews. McHarg v. Fitzpatrick, 210 F. 2d 792 (C.A. 2), explained and followed. Davis Haskin, Esq., 705 Olive St., St. Louis, Mo., for the petitioners. William H. Welch, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Respondent determined deficiencies in the income taxes of petitioners, as follows: Docket No.
Year
Deficiency
72381
1953
$8,773.89
1954
6,922.47
1955
6,967.16
72382
1953
8,889.23
1954
7,031.36
1955
7,055.00
72383
1953
8,882.90
1954
7,031.50
1955
4,595.62
72384
1953
8,658.60
1954
6,983.42
1955
6,901.04
72385
1953
3,740.19
1954
2,456.58
1955
1,486.68
76434
1954
1,104.69
1955
1,118.99
1956
1,126.35
76435
1954
1,860.33
76436
1954
1,104.69
1955
1,117.17
1956
1,128.05
76437
1954
1,860.33
1955
1,117.17
1956
1,046.66
76438
1954
1,104.69
1955
1,481.36
1956
1,480.42
76439
1954
1,104.69
1955
1,118.99
1956
1,126.35
76440
1954
1,104.69
1955
1,118.99
1956
1,126.03
76441
1954
1,860.33
*75 The sole issue concerns the total number of trusts created by the will of Frank C. Rand and the trust indenture executed by Helen O. Rand. All of the facts are stipulated by written agreement, and are incorporated herein by this reference and adopted as the facts of the cases. The petitioners are the duly qualified trustees of the trusts created under the will of Frank C. Rand or under the inter vivos trust instrument executed by Helen O. Rand. Returns for the years in question were filed with the district director of internal revenue at St. Louis, Missouri. Frank C. Rand, hereinafter sometimes referred to as Rand, died on December 2, 1949, a resident of St. Louis County, Missouri. He left surviving him four sons and two daughters. All of his children were married at the time of his death and all, except one, had children living at that time. On the date of his death Rand had twelve grandchildren. Two additional grandchildren were born since that date. The names of Rand's children and grandchildren, with the dates of births and deaths occurring after his death, are as follows: Edgar E. Rand
Jeanette Rand Mitchell
(died October 26, 1955)
Mary Frances Rand Wohltman
Helen Octavia Rand
Henry H. Rand
Carla Clingman Rand Weber
Frank C. Rand, III
Norfleet H. Rand
Miriam McLeod Rand
Helen Norfleet Rand (born January 3, 1951)
Norfleet Hale Rand, Jr. (born April 12, 1953)
Miriam Rand Johnston
Gale F. Johnston, Jr.
Chambless Rand Johnston
Norfleet R. Johnston
Laura Rand Orthwein
Laura Rand Orthwein
Nina Baldwin Orthwein
Nettie Rand Orthwein
Frank C. Rand, Jr.
None
*76 Rand's will, dated January 12, 1948, provided, inter alia, the following: ITEM EIGHT: I direct that all the rest, residue and remainder of my estate, of whatever kind and wherever situated, be divided into as many equal parts as will provide: (1) One equal part for the benefit of the children of my son Edgar E. Rand who survive me, and for the descendants, per stirpes, of his deceased children who are living at the time of my death. * * * (2) One equal part for the benefit of the children of my son Frank C. Rand, Jr. who survive me, and for the descendants, per stirpes, of his deceased children who are living at the time of my death. * * * (3) One equal part for the benefit of the children of my son Henry H. Rand who survive me, and for the descendants, per stirpes, of his deceased children who are living at the time of my death. * * * (4) One equal part for the benefit of the children of my son Norfleet H. Rand who survive me, and for the descendants, per stirpes, of his deceased children who are living at the time of my death. ** * (5) One equal part for the benefit of the children of my daughter Miriam Rand Johnston (wife of Gale F. Johnston) who survive me, and *77 for the descendants, per stirpes, of her deceased children who are living at the time of my death. * * * (6) One equal part for the benefit of the children of my daughter Laura Rand Orthwein (wife of William R. Orthwein, Jr.) who survive me, and for the descendants, per stirpes, of her deceased children who are living at the time of my death. * * * Each of such above mentioned parts shall be further divided into as many equal parts as will provide one such part for each person or classes of persons in the class or group for which the equal parts created by the first division are set apart. To illustrate: My son, Edgar E. Rand, now has three children, and if these three children should be the only descendants of my son Edgar E. Rand surviving me, then this portion shall be divided into three equal parts so that a separate equal part is provided for each child of his, but if at the time of my death only two children of my son Edgar E. Rand should survive me and there should be descendants of a deceased child surviving me, then there shall be set apart out of the portion herein provided for the children and descendants of my son, Edgar E. Rand, one equal part for each of his surviving *78 children and one equal part, collectively, for the descendants of his deceased child. The separate parts of my estate resulting from the division according to the foregoing requirements I give, devise and bequeath to the TRUSTEES for the several Trust Estates created hereby, hereinafter named or appointed as hereinafter directed, or to their successor or successors IN TRUST TO HAVE AND TO HOLD IN TRUST as separate and distinct Trust Estates, with powers, rights, authority and discretion, upon the conditions and limitations and for the uses and purposes which follow, to-wit: * * *
(I) In order to carry out my intention which is to provide for all of the children of my children, whether they be born before or after my death, all trusts created hereunder are subject to this condition - if after my estate is originally divided as herein specified, and the several parts have passed to the respective Trustees, a child is born to any of my children, then the Trustees for the family group into which such child is born, by equal proportionate deduction from all of the trust estates held for such family group shall provide a Trust Estate for such newly born child in an amount determined *79 as follows: The Trustees shall ascertain the total market value of the separate Trust Estates held at that time for such family group, throwing into hotchpot all distributions, whether of principal or income, theretofore made from such trusts. The total thus obtained shall then be divided into as many equal parts as will provide one part for each old trust in the particular family group and one part for the new-born child in that family group; the parts provided for each such old trust shall be charged with any distributions or advancements which may have been made to the beneficiary thereof, and all of the parts shall thereafter stand liable proportionately for any indebtedness of the old trusts not specifically attributable to or created especially for the benefit of any particular beneficiary. The parts thus divided shall constitute the Trust Estates for the respective beneficiaries and shall be held by the Trustees of the family group into which the child is born, subject to all of the terms and conditions of this will the same as if they had been originally set apart. This procedure shall be followed whenever a child is born to any child of mine. * * *
(L) The Trust Estates *80 created for the benefit of my grandchildren shall, subject to use and distribution of parts of principal and disposition of income hereinafter provided and authorized, to encroachment to provide for a child or children born to any child of mine after my death as authorized in Clause (I) of this item, and to termination as provided in Clause (O), be held for their benefit by the Trustees for and during their natural lives, and at their deaths, respectively, the property constituting their Trust Estate shall go and be transferred and distributed, in equal parts, per stirpes, to their lineal descendants, subject, where applicable, to the provisions of Clauses (Q) and (R) of this item, but if they die without issue, it shall then go and be transferred and distributed, per stirpes, to those persons related to me by blood who would be their heirs at law under the laws of descent and distribution of the State of Missouri then in force, unless any such heir at law is a child of mine who then has living lineal descendants, in which event the share which would otherwise go to such child of mine with living lineal descendants shall go in equal parts, per stirpes, to such child's living lineal *81 descendants, all subject, however, where applicable, to the provisions of Clauses (Q) and (R) of this item. (M) During the existence of any of the trusts created under this will, the Trustees, in their sole discretion, shall have the power to make such use or other disposition of the net income of the trusts, respectively, for which they are acting as in their opinion would be to the best interest of the respective beneficiaries; further, in the event that occasions arise where any beneficiary is in need of funds in excess of the net income of his or her Trust Estate, the Trustees, if the corporate Trustee and the individual Trustee who is neither a beneficiary nor the parent of a beneficiary (or the corporate Trustee alone if no individual Trustee who is not a beneficiary or the parent of the beneficiary is then acting) decide it is proper to do so, the Trustees shall have power to encroach upon the principal of such beneficiary's Trust Estate to such extent as those Trustees who are given the power to decide the question of encroachment deem proper under the circumstances. * * * Any income not used or distributed to the beneficiaries in accordance with the provisions of this *82 paragraph in the year in which it is received shall be added to and become a part of the principal of the respective Trust Estates, and shall be administered as such. * * *
(N) If at any time during the existence of the trusts created for my grandchildren in any family group the Trustees find that the child of mine [underscored in original] in such family group, because of some unusual or unforeseen occurrence or circumstance, is in need of funds which cannot be conveniently supplied to such child of mine, the Trustees for such family group (if a child of mine is one of the trustees he shall have no vote on the proposition) in their sole discretion, shall have the right to relieve the situation out of the funds and property of the trusts of such family group, income if any in excess of the needs of my grandchildren is on hand, or principal if not, in whatever amount the Trustees (other than the child of mine who is to benefit) deem proper under the circumstances. Any expenditure for the benefit of a child of mine out of the trusts held for the benefit of my grandchildren or any of their descendants shall be charged in equal proportion to the trusts of the family group of such *83 child of mine. (O) Further distribution of principal of the Trust Estates created for the benefit of my grandchildren may be made by the Trustees under the conditions and in amounts which follow: At the time any grandchild of mine who is a beneficiary of a Trust reaches the age of thirty-one (31) years, or prior thereto, if the Trustees in their sole discretion, determine that such beneficiary is capable of making prudent and careful use of money or property available to him or her, the Trustees may distribute to him or her at one time or at several times such amount of his or her Trust Estate, not however in excess of one-half of the original principal less prior principal distributions, as the Trustees determine it is proper to distribute; if at any time after such beneficiary reaches the age of thirty-one (31) years, the Trustees in their sole judgment and discretion, determine that such beneficiary is capable of making prudent and careful use of money or property available to him or her, then the Trustees shall have the power to distribute to such beneficiary at one time or at several times the whole or any part of the property then held in trust for such beneficiary. Upon *84 complete distribution in accordance with this provision of this item the Trustees shall stand discharged of any further obligations as to the amount or amounts distributed. * * *
(Q) i/f, from time to time under the provisions of this will, any portion of my estate would pass to any person for whom an estate is held in trust hereunder, then such portion shall not pass directly to such person but shall pass to the Trustees for such person in trust, and shall constitute a part of the principal of the Trust Estate so held for such person and be subject to all of the conditions and limitations of such estate so held, and subject also to the limitations expressed in Clause (R) hereof. (R) If, under the provisions of this will, any contingent beneficiary (all great grandchildren of mine shall be considered contingent beneficiaries) becomes entitled to a portion of my estate before reaching the age of twenty-one (21) years, unless the limitation expressed in the rule against perpetuities is exceeded by so doing, the trust as to his or her share shall continue until he or she reaches the age of twenty-one (21) years, and shall then be distributed to him or her free of trust, but if *85 this period of time would exceed the limitation expressed in the rule against perpetuities then such trust shall continue only for one day less than such limited period and shall then be distributed to him or her free of trust. * * *
ITEM NINE: The Trustees shall annually render to the adult beneficiaries of the several Trust Estates a written statement and account of the transactions of the Trustees of his or her Trust Estate during the preceding year. * * *
ITEM TWELVE: As Trustees for the several Trust Estates created hereunder I make appointments as follows: "For the Trust Estates created for those in the family group of Edgar E. Rand, the Mercantile-Commerce Bank & Trust Company, Edgar E. Rand and Henry H. Rand. For the Trust Estates created for those in the family group of Frank C. Rand, Jr., the Mercantile-Commerce Bank & Trust Company, Edgar E. Rand and Frank C. Rand, Jr. For the Trust Estates created for those in the family group of Henry H. Rand, the Mercantile-Commerce Bank & Trust Company, Edgar E. Rand and Henry H. Rand. For the Trust Estates created for those in the family group of Norfleet H. Rand, the Mercantile-Commerce Bank & Trust Company, Edgar *86 E. Rand and Norfleet H. Rand. For the Trust Estates created for those in the family group of Miriam Rand Johnston, the Mercantile-Commerce Bank & Trust Company, Edgar E. Rand and Henry H. Rand. For the Trust Estates created for those in the family group of Laura Rand Orthwein, the Mercantile-Commerce Bank & Trust Company, Edgar E. Rand and Henry H. Rand. * * *
The trustees interpreted the will as providing for the creation of separate and distinct trusts for each grandchild and Frank C. Rand, Jr. Accordingly, a partial distribution of property was initially made in trust for the then existing twelve grandchildren and Frank C. Rand, Jr. [2] The share distributed in trust for Miriam McLeod Rand was later further divided to create two additional trusts for the two after-born children of Norfleet H. Rand, hereinafter sometimes referred to as Norfleet. The total number of trusts then being administered under the will was fifteen. *87 Mercantile Trust Company (formerly Mercantile-Commerce Bank and Trust Company), one of the trustees, kept all of the books and records of each trust, held in its possession all securities and cash constituting assets of each trust, and handled all the administrative details of each trust. Separate accounts for each trust were maintained for the assets, investments, receipts and distributions of each trust. Each of the trusts was given a title, such as "Mercantile-Commerce Bank and Trust Company, St. Louis, Mo., Edgar E. Rand and Henry H. Rand, Trustees Under Item Eight (1) of the Will of Frank C. Rand for Jeanette Hale Rand Mitchell," to disguish it from the other trusts in the family group, and separate account numbers were used for each trust. Individual ledger sheets were kept for each trust. Federal income tax returns were filed on the basis of separate trusts. Securities held in each trust were registered in the names of the trustees for each individual beneficiary. At the time the executors of Rand's Estate made the first distribution of assets, Norfleet had only one child, Miriam McLeod Rand. At the time the executors made the final distribution on or about July 31, 1951, Helen *88 Norfleet Rand, the second daughter of Norfleet, had been born. Norfleet Hale Rand, Jr., the third child of Norfleet, was born on April 12, 1953. The assets initially held in trust for Miriam McLeod Rand after the first distribution were further divided between her sister and brother, pursuant to the terms of the will. The distribution of assets was carried out under the orders of the Probate Court for the County of St. Louis. The first order for partial distribution, for example, reads in part as follows: In Re Estate of Frank C. Rand, Deceased. No. 20827 ORDER OF PARTIAL DISTRIBUTION Come now Mercantile-Commerce Bank and Trust Company, Edgar E. Rand and Henry H. Rand, Executors of the estate of Frank C. Rand, deceased, and present to the Court a petition, duly verified by affidavit, praying for an order authorizing and directing them to make partial distribution of the assets of said estate as follows, to-wit: Pay, assign, transfer and deliver to Mercantile-Commerce Bank and Trust Company, Edgar E. Rand and Henry H. Rand, Trustees under the Will of deceased, for the benefit of Jeanette Hale Rand Mitchell: Out of income, cash $10,000.00 Out of principal: 1,000 shares *89 International Shoe Company Common Stock * * *
Respondent determined that Rand's will created only six separate trusts, i.e., one trust for each family group. Rand, as evidenced by the language of his will, intended to and did create separate and distinct trusts for each grandchild living at his death and any grandchild born thereafter. Helen O. Rand, hereinafter sometimes referred to as Helen, executed a declaration of trust on January 10, 1951. She died on February 13, 1954. The names of Helen's nieces and nephews and their respective children, with the dates of death occurring after her death are as follows: Nieces and Nephews
Children of Nieces and
of Helen O. Rand
Nephews of
Helen O. Rand
Joseph O. Rand
Joseph O. Rand, Jr.
(predeceased grantor)
Milton L. Rand
Laura Lanier Rand
Fred L. Rand
Mildred Rand Lines
Edgar O. Rand
Ada Rand Yarbrough
Helen Yarbrough Porter
John S. Yarbrough, Jr.
Mrs. Elbert Jamison, Jr.
Minnie Lois Yarbrough
Minnie Rand Dillard
No children
Edgar E. Rand
Jeanette Rand Mitchell
(died October 26, 1955)
Mary Frances Wohltman
Helen Octavia Rand
Henry H. Rand
Carla Clingman Rand
Weber
Frank C. Rand, III
Norfleet H. Rand
Miriam McLeod Rand
Helen Norfleet Rand
Norfleet Hale Rand, Jr.
Miriam Rand Johnston
Gale F. Johnston, Jr.
(died May 2, 1956)
Chambless Rand John-
ston
Norfleet R. Johnston
Laura Rand Orthwein
Laura Rand Orthwein
Nina Baldwin Orthwein
Nettie Rand Orthwein
Frank C. Rand, Jr.
No children
*90 The declaration of trust contained, inter alia, the following provisions: II. * * *
(h) The remainder of the Trust Estate shall be divided so as to provide: (1) One part, consisting of one-eighth (1/8th) thereof, for the benefit of the children of Grantor's nephew JOSEPH O. RAND, now deceased, who survive her, and per stirpes, for the descendants of any child of his who may predecease Grantor; (2) One part, consisting of one-eighth (1/8th) thereof, for the benefit of the children of Grantor's nephew FRED L. RAND, whether heretofore or hereafter born, and per stirpes for the descendants of any child of his who may predecease Grantor; (3) One part, consisting of one-eighth (1/8th) thereof, for the benefit of the children of Grantor's niece ADA RAND YARBROUGH, whether heretofore or hereafter born, and per stirpes for the descendants of any child of hers who may predecease Grantor; * * *
(5) One part, consisting of one-twelfth (1/12th) thereof, for the benefit of the children of Grantor's nephew EDGAR E. RAND, whether heretofore or hereafter born, and per stirpes for the descendants of any child of his who may predecease Grantor; (6) One part, consisting of one-twelfth *91 (1/12th) thereof, for the benefit of the children of Grantor's niece MIRIAM RAND JOHNSTON, whether heretofore or hereafter born, and per stirpes, for the descendants of any child of hers who may predecease Grantor; (7) One part, consisting of one-twelfth (1/12th) thereof, for the benefit of the children of Grantor's nephew HENRY H. RAND, whether heretofore or hereafter born, and per stirpes for the descendants of any child of his who may predecease Grantor; (8) One part, consisting of one-twelfth (1/12th) thereof, for the benefit of the children of Grantor's niece LAURA RAND ORTHWEIN, whether heretofore or hereafter born, and per stirpes for the descendants of any child of hers who may predecease Grantor; (9) One part, consisting of one-twelfth (1/12th) thereof, for the benefit of the children of Grantor's nephew NORFLEET H. RAND, whether heretofore or hereafter born, and per stirpes for the descendants of any child of his who may predecease Grantor; * * *
Each of such above mentioned parts shall be further divided into as many equal parts as will provide one such part for each person or classes of persons in the class or group for which the equal parts created by the *92 first division are set apart. To illustrate: Grantor's nephew Edgar E. Rand now has three children, and if these three children should be the only descendants of said Edgar E. Rand surviving Grantor, then this portion shall be divided into three equal parts so that a separate equal part is provided for each child of his, but if at the time of Grantor's death only two of Edgar E. Rand's children are living and there should be descendants of a deceased child of his surviving, then there shall be set apart out of the portion herein provided for the children and descendants of Edgar E. Rand one equal part for each of his surviving children and one equal part, collectively, for the descendants of his deceased child. Grantor declares that by the provision for the division of the Original Trust Estate at her death into the parts enumerate in this section of this Declaration of Trust, (II h), it is her purpose to effect an equitable distribution of the Trust Estate among those persons for whom it is her desire to make provision, and that such persons include children born after this date and after Grantor's death. Each part is therefore declared to be subject to the provisions hereinafter *93 made with reference to providing a trust estate for the benefit of any child that may be born to any niece or nephew of Grantor after the date of Grantor's death. * * * III. The Trustees above named shall distribute the parts above provided to the Trustees hereinafter named as Trustees for the several parts, and such named Trustees and their successor or successors in trust shall hold that Trust Estates for the uses and purposes, with powers, rights, authority and discretion, and upon the conditions and limitations which follow: * * *
(i) In order to carry out Grantor's intention as heretofore expressed in paragraph (h) of Section II of this Declaration of Trust, which is that children born to her nieces and nephews after the date of Grantor's death shall be provided for, Grantor declares that all trusts created hereunder are subject to this condition - If, after the Original Trust Estate has been divided in the manner required by Paragraph (h) of Section II hereof, and the several parts have passed to the respective Trustees, a child is born to any of Grantor's nieces or nephews, then the Trustees for the family group into which such child is born, by equal proportionate *94 deductions from all of the Trust Estates then held for such family group, shall provide a Trust Estate for such newly born child in an amount to be determined as follows: The Trustees shall ascertain the total market value of the separate Trust Estates held at that time for such family group, throwing into hotchpot all distributions, whether of principal or income, theretofore made from such trusts. The total thus obtained shall then be divided into as many equal parts as will provide one part for each old trust in the particular family group and one part for the new-born child in that family group; the parts provided for each such old trust shall be charged with any distributions or advancements which may have been made to the beneficiary thereof, and all of the parts shall thereafter stand liable proportionately for any indebtedness of the old trusts not specifically attributable to or created especially for the benefit of any particular beneficiary. The parts thus divided shall constitute the Trust Estates for the respective beneficiaries and shall be held by the Trustees for the family group into which the child is born, subject to all of the terms and conditions of this Declaration *95 of Trust the same as if they had been originally set apart. This procedure shall be followed whenever a child is born to any niece or nephew of Grantor. The procedure outlined above for providing a trust estate for the benefit of a child born to any of Grantor's nieces and nephews after Grantor's death shall not require any contribution to such newly created Trust Estate by any person for whom no trust estate exists at the date of the birth of such child. (j) The Trust Estates created for the benefit of the children of Grantor's nieces and nephews, or their children, shall, subject to use of parts of principal, disposition of income, right to earlier distribution, hereinfater provided and authorized, and encroachment to provide for newly born children as contained in Paragraph (i) of this Section, be held for their benefit by the Trustees for and during their natural lives, and at their deaths, respectively, the property constituting their share of the respective Trust Estates shall go and be transferred and distributed, in equal parts, per stirpes, to their lineal descendants, but if they die without issue, it shall then go and be transferred and distributed according to the laws *96 of descent and distribution of the State of Missouri to those persons related to Grantor by blood who would be their heirs at law under the laws of the State of Missouri then in force, all subject, however, where applicable to the provisions of Clauses (o) and (r) of this Section. Notwithstanding anything in this instrument to the contrary, however, all trusts created hereunder shall terminate twenty-one (21) years after the death of the last surviving child of any niece or nephew of Grantor who is living at the date of the execution of this instrument, and thereupon, final distribution of any property in the trusts shall be made to the beneficiaries entitled thereto. * * *
(m) If at any time during the existence of any of the Trusts created under this instrument the Trustees find any beneficiary of any Trust is in need of funds for any purpose, the Trustees shall have the right, in their discretion, to distribute to such beneficiary who is in need of funds whatever portion of the net income of the Trust Estate held for such beneficiary which is needed, and if the Trustees, in their discretion, determine that income is not sufficient to meet whatever need or requirement may *97 arise on the part of any beneficiary for whom property is held in trust, the Trustees are given power to encroach upon the principal of the respective Trust Estates to supply the deficiency. Distribution of income and encroachment on principal shall, in each instance, be charged to the share of the beneficiary for whose benefit such distribution is made. No interest shall be charged to any beneficiary on account of any distribution out of principal. Any income not distributed to the beneficiaries of the several Trusts or used and applied for them in accordance with the provisions of this paragraph in the year in which it is received shall be added to and become a part of the principal of the respective Trust Estates, and shall be administered as such. * * *
(n) Distribution of principal of the Trust Estates created for the benefit of the children of Grantor's nieces and nephews, or their children, may be made by the Trustees under the conditions, at the times in the amounts which follow: At the time any beneficiary of such Trust reaches the age of thirty-one (31) years, if the Trustees, in their sole discretion, determine that it would be proper, desirable and for the best *98 interests of such beneficiary so to do and such beneficiary is capable of making prudent and careful use of money or property available to him or her, the Trustees may distribute to him or her such amount of his or her Trust Estate, not in excess of one-half (1/2) thereof, as the Trustees determine it is proper to distribute; if, at the time or after any beneficiary reaches the age of forty-one (41) years, the Trustees, in their sole discretion, determine that it would be proper, desirable and for the best interests of such beneficiary so to do and such beneficiary is capable of making prudent and careful use of money or property available to him or her, the Trustees shall have power to distribute to such beneficiary the whole or any part of the share of such beneficiary then held in his or her Trust Estate. (o) If, under the provisions of this instrument, any contingent beneficiary becomes entitled to any portion of the Trust Estate before reaching the age of twenty-one (21) years, then, until he or she reaches the age of twenty-one (21) years, or until twenty-one (21) years after the date of the death of the niece or nephew of Grantor from whom such contingent beneficiary descends, *99 whichever period of time is the shorter, his or her share shall be held in trust by the Trustees then holding such Trust Estate until such age or date is reached, and at such time the property then constituting his or her Trust Estate shall be distributed to him or her. * * *
(r) If, from time to time, under the provisions of this instrument, any portion of the Trust Estate would pass to any person for whom an estate is held in trust hereunder, then such portion shall not pass directly to such person but shall pass to the Trustees for such person in trust, and shall constitute a part of the principal of the Trust Estate so held for such person and be subject to the same conditions and limitations of such estate so held. * * *
IV. The Trustees shall annually render to the adult beneficiaries of the several Trust Estates a written statement and account of the transactions of the Trustees of his or her Trust during the preceding year. * * *
VI. The Trustees of the several Trust Estates which are intended to come into effect upon the death of Grantor shall be as follows: (1) For the Trust Estate created for the benefit of the children of Grantor's nephew JOSEPH *100 O. RAND, now deceased, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, HELEN W. RAND and EDGAR E. RAND; (2) For the Trust Estate created for the benefit of the children of Grantor's nephew FRED L. RAND, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, and Grantor's nephews FRED L. RAND and EDGAR E. RAND; (3) For the Trust Estate created for the benefit of the children of Grantor's niece ADA RAND YARBROUGH, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, Grantor's niece ADA RAND YARBROUGH and Grantor's nephew EDGAR E. RAND; * * *
(5) For the Trust Estate created for the benefit of the children of Grantor's nephew EDGAR E. RAND, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, and Grantor's nephews EDGAR E. RAND and HENRY H. RAND; (6) For the Trust Estate created for the benefit of the children of Grantor's niece MIRIAM RAND JOHNSTON, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, Grantor's niece MIRIAM RAND JOHNSTON and Grantor's nephew EDGAR E. RAND; (7) For the Trust Estate created for the benefit of the children of Grantor's nephew HENRY H. RAND, the MERCANTILE-COMMERCE *101 BANK & TRUST COMPANY of St. Louis, Missouri, and Grantor's nephews HENRY H. RAND and EDGAR E. RAND; (8) For the Trust Estate created for the benefit of the children of Grantor's niece LAURA RAND ORTHWEIN, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, Grantor's niece LAURA RAND ORTHWEIN and Grantor's nephew EDGAR E. RAND; (9) For the Trust Estate created for the benefit of the children of Grantor's nephew NORFLEET H. RAND, the MERCANTILE-COMMERCE BANK & TRUST COMPANY of St. Louis, Missouri, and Grantor's nephews NORFLEET H. RAND and EDGAR E. RAND; * * *
(Italics supplied.) After Helen's death the trustees, pursuant to the terms of the trust instrument, transferred assets held by them to the trustees named in the trust instrument. These trustees interpreted the trust indenture as providing for the creation of separate and distinct trusts for each grandniece and grandnephew. [3] The total number of trusts then being administered under the indenture was twenty-five, ten of which are not in dispute. *102 Mercantile Trust Company, one of the trustees of each of the trusts, kept all of the books and records of each trust, held in its possession all securities and cash constituting assets of each trust, and handled all the administrative details of each trust. Separate accounts for each trust were maintained for the assets, investments, receipts and distributions of each trust. Each of the individual trusts bore a distinctive name, such as "Rand Helen O. Tr. U/A for J. O. Rand Jr." for identification purposes, and each had a separate account number. Separate ledger sheets were maintained for each trust. Securities held by each trust were registered in the name of the trustees for the individual beneficiary. Separate Federal income tax returns were filed for each trust. Respondent determined that the trust instrument executed by Helen created only ten separate trusts, i.e., one trust for each family group. Helen, as indicated by the language used in the trust indenture executed by her, intended to and did create separate and distinct trusts for each grandniece or grandnephew living at her death and any grandniece or grandnephew born thereafter to her nieces and nephews. The sole *103 issue before us calls for a determination of the number of trusts created by the will and the trust indenture, i.e., whether the will created six or fifteen separate trusts and the indenture ten or twenty-five trusts. [4] The question is important because each separate trust is considered a taxable entity. Multiple trusts result in lessening the over-all burden of taxation. Sections 161 and 162 of the Internal Revenue Code of 1939, and section 641 of the Internal Revenue Code of 1954. Petitioners take the position that the larger number of trusts was created in each instance. Such, they argue, was the intention of Helen and Rand, and the intention of the settlors is controlling. Petitioners rely on the directions for the subdivision of the trust corpora, the terminology used throughout both instruments, and the trustees' administration *104 and interpretation of the instruments as indicative of the settlors' intent. Respondent agrees with the general proposition that "intention" governs. He does not dispute the fact that the settlors indicated, in the language and provisions of the instruments, their intention to create separate and distinct trusts for each grandchild and grandniece or grandnephew. Instead, respondent adopts the approach that clearly-manifested "intent" must give way, for tax purposes at least, to what the terms of the agreement actually create. He reasons that no instrument can create more than one trust when the "separate trusts" are made dependent upon each other to determine the extent of the corpus and rights of each beneficiary. Respondent obtains this "rule" from his interpretation of McHarg v. Fitzpatrick, 210 F. 2d 792 (C.A. 2). He contends that the "separate trusts" within each family group in this case are dependent upon each other and hence only one trust for each family group as a whole was created. The intention of the settlor, as gleaned from within the "four corners" of the trust instrument, is controlling as to the number of trusts created. Unquestionably this was, *105 and is today, the rule applicable to these fact situations. Huntington Nat. Bank v. Commissioner, 90 F. 2d 876 (C.A. 6); Fiduciary Trust Co. v. United States, 36 F. Supp. 653 (S.D.N.Y.); St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W. 2d 359; Boland v. Mercantile-Commerce Bank & Trust Co., 349 Mo. 731, 163 S.W. 2d 597; Krause v. Jeannette Inv. Co., 333 Mo. 509, 62 S.W. 2d 890. The quest for and the discernment of this elusive "intent" has been the source of much litigation. Many factors are considered, including whether the settlor used the plural or singular form in referring to the beneficiaries' interests, in determining the settlors' intent. Respondent is here advocating the use of the test derived from his interpretation of McHarg v. Fitzpatrick, supra, as the sole determiner of "single or multiple" trusts. The case itself held on its facts that multiple trusts were created. As we read the quoted language set forth in our Findings of Fact, we encounter no difficulty in concluding that the language and provisions in the instruments indicate that Helen and Rand intended multiple *106 trusts. Some confusion might arise because of the use of "Trust (Estates)" instead of the simpler "(Trusts)." However, in the context of these instruments and in common usage, we think the words as used meant "Trust" or "Trusts." Cf. In Re McGinnis' Estate, 44 N.Y.S. 2d 932, affd. 268 App. Div. 966, 51 N.Y.S. 2d 768; Cooper v. Cooper, 5 N.J. Eq. 9. In view of respondent's position on brief, we need discuss this no further except to emphasize that the language providing for the subdivision of each family's part into multiple shares, the consistent use of the plural and singular forms of "trust" where appropriate, [5] and the references to separate trusts throughout both instruments have been held sufficient in similar cases to indicate separate and distinct trusts rather than a single trust. Lynchburg Trust & S. Bank v. Commissioner, 68 F. 2d 356 (C.A. 4); Union Trust Co. of Butler v. Commissioner, 84 F. 2d 386 (C.A. 3); Fidelity Union Trust Co. v. Kelly, 102 F. 2d 333, 986 (C.A. 3); George G. Allen, et al., Trustees, 40 B.T.A. 351; Helms Bakeries, 46 B.T.A. 308, 322; Kohtz Family Trust, 5 T.C. 554; *107 Nora Grace Trust, 13 T.C. 632; Fiduciary Trust Co. v. United States, supra; Lane v. United States, 83 F. Supp. 260 (E.D. Mo.). Furthermore, the trustees interpreted the instruments as providing for a separate trust for each living and after-born beneficiary. The trusts thus created were separately administered, i.e., separate names, account numbers, and ledger sheets were kept for each trust. Federal income tax returns were filed on the basis of separate trusts. Securities for each trust were held in the name of the respective trustees "for" the specific beneficiary of that trust. Cf. U.S. Trust Co. v. Commissioner, 296 U.S. 481. The trustees' actions are not conclusive, but are evidence to be considered since the trustees presumably discussed the trusts with the settlors and understood their wishes. See Huntington Nat. Bank v. Commissioner, supra. With reference to Rand's will, we have the benefit of the Orders of the Probate Court of St. Louis County, Missouri. These Orders provided *108 for the distribution of the assets on the basis of multiple trusts. While that court's actions are not binding upon us because the probate was apparently uncontested, still we believe that its Orders are of some evidentiary value as the interpretation and opinion of a court of record [6] whose judge or judges handled this estate. To disregard the actions of that court, as respondent apparently would have us do, would be to indulge in the violent assumption that all judges of state tribunals are mere puppets in the hands of litigants. This is something we cannot assume. Cf. John Shertzer Trust, 10 T.C. 1126; Babcock's Estate v. Commissioner, 234 F. 2d 837 (C.A. 3); Gallagher v. Smith, 223 F. 2d 218 (C.A. 3).
We are thus left with the uncontroverted fact that these instruments, by all indications, do create multiple trusts within each family group. Respondent asks us to decide these cases solely upon the basis of a rule distilled from his version of what was stated in McHarg v. Fitzpatrick, supra. The pertinent parts of the will involved in that case *109 are quoted below. [7] The District Court for the District of Connecticut (McHarg v. Fitzpatrick, an unreported case, 45 A.F.T.R. 1028,) concluded that the quoted section indicated the intent of the testator to create four separate trusts, one for each beneficiary named therein. *110 The decision rested primarily on the presence of the instructions for the division of the principal into separate shares for the named beneficiaries. The court also relied upon the fact that the language used throughout the instrument indicated separate trusts, that each share was treated separately throughout its existence, and that the plural form of terminology was consistently used. The Court of Appeals for the Second Circuit affirmed the District Court. In doing so, the discussion in the opinion centered mainly on the separation of the individual trusts. In commenting on the separation, the Court of Appeals noted the following (p. 795): (a) "although there was but one trustee for all the 'shares,' no 'share' had any other feature in common with any other 'share'"; (b) "[each] had only one beneficiary, and he or she had no possible interest in any other 'share' while the res of that 'share' was held in trust at all"; (c) "[the] death of any beneficiary put an unconditional end to any equitable ownership of that 'share'"; and (d) "during the existence of the 'share,' qua 'share,' it was not to receive any addition from any of the other 'shares'; nor was it to be drawn upon *111 in favor of another 'share.'" The trusts in issue here, while in existence, have nothing in common with each other. Each had only one beneficiary and this beneficiary had no interest in any other beneficiary's share. The trusts were separately managed, and each was subject to full or partial distribution in the sole discretion of the trustees. If there was no prior distribution, termination of each trust was measured by the life of the individual beneficiary. Respondent, however, seizes upon the fact that each trust within the family group could be invaded in favor of after-born children. It was also possible that each trust within a family group, if one beneficiary died without issue, would receive an addition from the deceased's share. See Mo. Ann. Stat. (Vernon), sec. 474,010. This, respondent reasons, makes each trust within the family group interdependent, and in that state of affairs, under McHarg v. Fitzpatrick, supra, the so-called "separate trusts" should be treated as part of one family group trust. In our opinion, the respondent misreads that case and interprets it too broadly. The Court of Appeals pointed out that it was not trying to lay down "any general *112 principle by which the question can always be answered." 210 F. 2d 794. The court also hastened to say that the factors enumerated in the opinion were not necessarily decisive of the issue. 210 F. 2d 795. We think, therefore, that the Court of Appeals was amplifying what the District Court stated on this matter or at most was outlining additional factors, beyond those regularly employed, to aid in casting light upon the intention of settlors. No discussion was given, except as to the "singular-plural" language test, of the other considerations relied upon by the District Court in reaching its decision. It would be reasonable to infer that there was agreement with the District Court with respect to these other considerations. The pronouncements made by the Court of Appeals were not intended to serve as the sole indicia of single or multiple trusts. The instruments before us are unambiguous in their language and tone and the language as read provides for multiple trusts. The external factors, to the extent we are permitted to rely upon them, also favor separate trusts. The trusts for the most part, even under the Court of Appeals tests, are not dependent *113 upon each other. We will do in these cases as was done in J. C. Wynne, et al., Trustees, 28 B.T.A. 125, affd. 77 F. 2d 473 (C.A. 5), and Fort Worth National Bank v. United States, 137 F. Supp. 71 (N.D. Tex.), i.e., evaluate all the factors, including "the independence of each beneficiary's interest" in reaching a decision. We hold, taking into consideration all the facts present here, that the instruments in question provided for separate trusts within each family group. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Frank C. Rand Trust U/W For The Benefit Of The Laura Rand Orthwein, Edgar E. Rand, Norfleet H. Rand and Miriam Rand Johnston Family Groups, Norfleet H. Rand, Henry H. Rand and Mercantile Trust Company, Trustees, Docket Nos. 72382, 72383, 72384, 72385; Helen O. Rand Trust U/A For The Benefit Of The Edgar E. Rand, Deceased, Fred L. Rand, Deceased, Henry H. Rand, Norfleet H. Rand and Miriam Rand Johnston Family Groups, Henry H. Rand, Norfleet H. Rand, and Mercantile Trust Company, Trustees, Docket Nos. 76434, 76435, 76436, 76438, 76440; Helen O. Rand Trust U/A For The Benefit Of The Joseph O. Rand, Deceased, Family Group, Henry H. Rand, Helen W. Rand, and Mercantile Trust Company, Trustees, Docket No. 76437; Helen O. Rand Trust U/A For The Benefit Of The Laura Rand Orthwein Family Group, Laura Rand Orthwein, Henry H. Rand, and Mercantile Trust Company, Trustees, Docket No. 76439; and Helen O. Rand Trust U/A For The Benefit Of The Ada Rand Yarbrough Family Group, Henry H. Rand, Ada Rand Yarbrough, and Mercantile Trust Company, Trustees, Docket No. 76441.↩
2. A portion of decedent's estate was, under the terms of the will, to pass in trust to the children of Frank C. Rand, Jr. and was to be held in trust for him until such time as children were born to him. Frank C. Rand, Jr. had no children, and hence only one trust existed in his family group. Respondent does not dispute the existence of this trust. Therefore, only the individual trusts, in excess of six in number conceded as correct by respondent, are in dispute.↩
3. The instrument also created trusts for Minnie Rand Dillard and Frank C. Rand, Jr. Respondent does not dispute the existence of these two trusts. Therefore, only the individual trusts, in excess of ten in number conceded as correct by respondent, are in dispute.↩
4. The deficiency notices place into issue only the trusts in excess of one per family group under Rand's will, excluding the trust created for Frank C. Rand, Jr., and only the trusts in excess of one per family group under Helen's trust indenture, excluding the trusts created for Minnie Rand Dillard and Frank C. Rand, Jr.↩
5. Part VI of Helen's trust indenture, in specifying those who were to act as trustees, used the singular form "Trust Estate."↩
6. Mo. Ann. Stat. (Vernon), secs. 472.020, 472.030, 472.100, 472.110.↩
7. (a) An equal one-third part of my said residuary estate, less the sum or value of twenty thousand (20,000) dollars, I give, devise and bequeath to my Trustee hereinafter named, in trust, to subdivide the same into four equal shares, and to hold, manage, invest and reinvest each of said equal shares, and to collect the income, issues and profits thereof, and (1) to pay the net income of one of said shares as nearly as may be in quarter-yearly payments to my son HENRY K. McHARG, JR., during his life, and upon his decease to divide and distribute the principal of said share, and I give, devise and bequeath the same to and among his lawful issues, per stirpes, and (2) to pay the net income of one of said shares as nearly as may be in quarter-yearly payments to JANE CRAVEN BYINGTON, daughter of my said son, during her life, and upon her decease to divide and distribute the principal of said share, and I give, devise and bequeath the same to and among her lawful issue, per stirpes, and (3) to pay the net income of one of said shares as nearly as may be in quarter-yearly payments to HENRY K. McHARG, 3rd, son of my said son, during his life, and upon his decease, to divide and distribute the principal of said share, and I give, devise and bequeath the same to and among his lawful issue, per stirpes, and (4) to pay the net income of one of said shares as nearly as may be in quarter-yearly payments to ESTHER-BELLE BRITTON McHARG, daughter of my said son, during her life, and upon her decease to divide and distribute the principal of said share, and I give, devise and bequeath the same to and among her lawful issue, per stirpes; provided, however, that if any one of my said grandchildren shall predecease me without lawful issue him or her surviving, or shall die after me without lawful issue him or her surviving, then in either event to divide and distribute and I give, devise and bequeath all shares whose disposition in accordance with the foregoing provisions shall thus be defeated, to and among the lawful issue of my said son, per stirpes.↩