ROBERT L. MOODY TRUST UTI 6/13/60, IRWIN M. HERZ, JR., TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2775-74.    Filed February 5, 1976.

*J. Michael Wylie, Paul W. Eggers,* and *Jack C. Spillman,* for the petitioner.

*John D. Copeland* and *Suzanne B. O'Neill,* for the respondent.

936

OPINION

Neither section 641(a), which declares that the income tax shall apply to the "taxable income of estates or of any kind of property held in trust," nor section 641(b), which provides that the tax on the "taxable income of an estate or trust" shall be paid by the fiduciary, nor any other Code section gives any guidance as to whether income from the "property held in trust" in this case is to be taxed as earned by one trust, or by several. The issue is basically factual. Its answer depends upon the settlor's intent, and his intent is to be gleaned from the language used in the trust instrument. *U.S. Trust Co. v. Commissioner,* 296 U.S. 481 (1936); *McHarg v. Fitzpatrick,* 210 F.2d 792, 794 (2d Cir. 1954); *Commissioner v. McIlvaine,* 78 F.2d 787, 788-789 (7th

Cir. 1935), affd. 296 U.S. 488 (1936); *State Sav. Loan & Trust Co. v. Commissioner,* 63 F.2d 482, 484 (7th Cir. 1933), affg. 25 B.T.A. 228 (1932); *Nora Grace Trust,* 13 T.C. 632 (1949).

The task of determining whether one or several trusts have been created is difficult because, save for the tax realm, it normally makes little difference. In the instant case, further difficulty stems from the fact that no distributions from the trust are likely until the donor's death and from the intractable ambiguity of the trust instrument itself. Certain provisions of the trust instrument seem to create a single trust with multiple beneficiaries. Other provisions indicate a separate trust for each beneficiary. Some provisions support both conclusions. In these circumstances, it is necessary not only to examine the instruments in their entirety but to consider the facts and circumstances surrounding the execution of the several instruments and the practical construction given the instruments by the trustees. These factors are considered not for the purpose of varying the terms of the instruments but for the purpose of seeking an explanation of the meaning of the terms used by the settlor in expressing his intent. *Buhl v. Kavanagh,* 118 F.2d 315, 321 (6th Cir. 1941); *San Diego Tr. & Svgs. Bk. v. United States,* an unreported case (S.D. Cal. 1971, 28 AFTR 2d 71-5526, 71-2 USTC par. 9518).

While the issue is a close one, we think Moody created a separate trust for each of his children. Moody's testimony shows an unequivocal intention to do this. The only question is whether the trust instrument accomplished this purpose. *U.S. Trust Co. v. Commissioner, supra; McHarg v. Fitzpatrick, supra.*

Moody executed the original trust indenture on June 13, 1960, shortly after the birth of his first child. Consistent with his family's tradition, he employed the trust as a vehicle for administering and passing his wealth to succeeding generations and providing financial security for his offspring. After the birth of his second child, however, Moody became concerned that the original instrument did not clearly reflect his desire to create a separate trust for each child. Hence, article IV of the original agreement[2] was amended "to more clearly define the *Estates and*

---

[2] The relevant part of the original art. IV is as follows:

"During the lifetime of the Donor the Trustee shall hold the Trust Property together with all accumulated income thereon for the benefit of the children of the Donor living at the time of the creation of this Trust or born to the Donor at any time thereafter and upon the death of the Donor or within one (1) year thereafter the then acting Trustee and/or

*Trusts* created and the person and/or persons to benefit therefrom." [Emphasis supplied.]

Since petitioner relies primarily on article IV, we shall begin analysis of the trust instrument with it. Article IV, quoted in full in our Findings of Fact, provides that the trustee shall hold the trust property and accumulated income for the benefit of Moody's living and subsequently born children. The trustee was directed "from time to time and not less than annually [to] divide and re-divide the Trust Property into equal parts or shares" so that one part or share "may be held for the benefit of each child of the Donor then living" and one part or share may be held per stirpes for the offspring of each of Moody's deceased children. In the case of the death of one of Moody's children, the article does not provide for a revised division of the whole trust estate among Moody's other children, but rather calls for that child's share to be held for the then-living offspring of such deceased child and, only if there are none, for a division of that child's share and for its addition to the shares of the other children. All of these provisions manifest an intention to treat each child's share separately.

Within 1 year after Moody's death, the successor trustee is to pay over to the children of any deceased child of the donor the share of the trust property held for their benefit. The remaining shares are to be held for the benefit of Moody's surviving children. Significantly, if any of the surviving children of any deceased child of the donor become entitled to a distribution of their share of the property and they have not obtained their majority, that part or share is to be held for his or her benefit, with the Moody National Bank of Galveston serving as trustee, until he or she reaches the age of 21.

Under article III,[3] as amended, Moody retained the power to

---

Trustees hereunder shall divide the Trust Property into equal parts or shares of such a number that one of such equal parts or shares may be held for the benefit of each child of the Donor then living and that one of such equal parts or shares may be paid per stirpes to the surviving children of each child of the Donor who may or shall have died prior thereto."

This article could have been construed to create separate trusts only upon Moody's death despite other references to the "Trusts" and "parts or shares" contained in other articles, see text *infra.*

[3] Under the original trust indenture Moody named himself trustee and his then wife, Edna Moody, his successor. After their separation and divorce, the instrument was amended several times until its final form was reached on Sept. 8, 1969.

appoint successor trustees. After Moody's death each of his children who have reached the age of 25 "shall succeed any then Trustee as Trustee of that share held for his or her benefit." However, each such child shall have the power to resign and appoint another trustee if the child "does not desire to act as Trustee of said Trust Estate."

Article V concerns payments to the beneficiaries. Until Moody's death all income is to be accumulated. However, the "Trustee may from time to time pay over to any beneficiaries * * * for whose benefit a part or share of the Trust Property is being held" sums necessary for health or education. Upon the donor's death, all income from any part or share held for the benefit of a child of the donor shall be paid to him if he has reached the age of 21. Until such time, the trustee shall continue to accumulate the income which shall be paid over upon the child's attaining the age of 21.

The trust instrument, as well as the preamble to the amendment quoted above, contain several references to the "Trust or Trusts" created thereunder. True, the majority of the references to the trust are in the singular. We think this ambiguity is understandable, since at the time the original trust indenture was executed Moody had only one child and he could not be sure how many children he would eventually produce. On June 13, 1960, however, there was only one child and therefore one trust.

We think a fair reading of the instrument as a whole, and particularly the language of article IV, reflects an intention that each "part or share" was to be a separate trust for each child. Otherwise, there would have been no occasion for the use of the plural terms "trusts" and "estates" referred to above. The preamble to the amendment of article IV also demonstrates this intention. Moreover, myriad configurations of interests result from the trust instrument. Some shares will be paid out in their entirety, while others remain in trust; some beneficiaries will receive income while others' income accumulates; some children will become the trustee of their part while others will not; some parts may be held by the Moody National Bank while others are held by Moody's children as trustees. These divisions directed in certain articles, as well as the annual division contemplated in article IV, militate in favor of the conclusion that each part constitutes a separate trust.

Consistent with this conclusion, separate fiduciary returns for a trust for each child have been filed each year since the birth of Moody's second son. Since Moody was the settlor, as well as the trustee, who filed those returns for each of the taxable years May 31, 1962, through May 31, 1968, the inference is clear that he intended to create, and thought each share or part was, a separate trust. This practical construction of the trust instrument by the settlor is "of great significance in construing an ambiguous trust instrument." *Helfrich's Estate v. Commissioner,* 143 F.2d 43, 46 (7th Cir. 1944), affg. 1 T.C. 590 (1943); *Estelle Morris Trusts,* 51 T.C. 20, 36 (1968), affd. per curiam 427 F.2d 1361 (9th Cir. 1970); cf. *McHarg v. Fitzpatrick, supra* at 794. See also *MacManus v. Commissioner,* 131 F.2d 670, 673 (6th Cir. 1942), revg. 44 B.T.A. 508 (1941); *Huntington Nat. Bank v. Commissioner,* 90 F.2d 876, 878-879 (6th Cir. 1937), affg. 32 B.T.A. 342 (1935).

It is true that, notwithstanding the explicit provision of article IV that the trust corpus and income be divided into separate parts, the corpus has been administered as a single fund. The same was true in *U.S. Trust Co. v. Commissioner, supra,* where the Court said (296 U.S. at 486-487):

If the various securities had been divided physically, if new certificates of stock had been obtained for the several beneficiaries, and such certificates and specific bonds and cash had been set aside for each, there would be no room for argument that three separate trusts were not created. But it was not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust. * * * Where there is an intention to create separate trusts, the fact that "the trusts" are "kept in one fund" does not necessarily defeat the intention and require the conclusion that there is but a single trust. * * * where "income and principal were given in equal shares, although out of one fund kept *in solido* for convenience of investment, a severance of the trust into its component parts has been adjudged. * * * The shares and interests are several, although the fund remains undivided." * * * [Citations omitted.]

In the instant case, there was simply no reason to make a physical division of the trust property or to set up separate bank accounts. To divide the trust assets and maintain four separate sets of books would have been a needless expense. The accountant for the trusts explained that he could easily determine at any time the precise amount in each trust by dividing the total book or fair market value of the trust property by four. This same procedure was evidently followed in computing each year's tax-

able income of each trust for the purpose of filing the separate fiduciary income tax returns. No distributions were to be made until Moody's death—with the limited exception of funds necessary for the health and education of a beneficiary of a part or share. However, a distribution for those purposes may be made only if the funds cannot be obtained from any other source. Moody is an extremely wealthy individual, and there is little likelihood that his children will have to resort to the trust funds for money. We do not think the trustee's technical failure to comply with the direction of the trust instrument militates against our conclusion. *Commissioner v. McIlvaine,* 78 F.2d at 790; *Kohtz Family Trust,* 5 T.C. 554, 556-557 (1945).

Nor do we think the provisions of article IV of the trust instrument allowing Moody's afterborn to share equally in the trust with other beneficiaries require the conclusion that the interests of the respective beneficiaries were so interdependent that only one trust was created. See *Commercial Bank at Winter Park v. United States,* 450 F.2d 330, 331 (5th Cir. 1971), and *San Diego Tr. & Svgs. Bk. v. United States, supra,* where the courts so concluded with respect to the trust instrument before them. This factor is but one of many to be weighed in the balance.

Respondent contends also that article V shows that the interests of the beneficiaries were not independent in authorizing distributions for the health, physical well-being, education, or emergencies of any beneficiary. However, the authority is given to make such distributions "to any beneficiaries of this Trust for whose benefit a part or share of the Trust Property is being held." We think the use of the plural word "beneficiaries" was inadvertent since the remainder of the clause refers to "a part or share" and the proviso limits the authority to such payments as are necessary or required by "said beneficiary and cannot be secured from any other source." We agree with petitioner that any distribution pursuant to this provision would be charged against the separate trust created for the recipient.

Article V also contains a provision that on the 21st anniversary of Moody's death, the death of his wife at the time of the trust instrument's execution, or any child in being at the time of such execution, "all rights, titles, interests and benefits in and to the Trust Property shall unconditionally vest" in the persons then living and designated as beneficiaries. Respondent argues that this provision shows that separate trusts were not created since

this language implies that no prior vesting was intended. We agree with petitioner that this provision was inserted as a precautionary provision to avoid a possible violation of the rule against perpetuities. It provides little guidance in resolving the issue here presented.

We hold that the trust instruments here in question created a separate trust for each one of Moody's four children. To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*